630 S.W.2d 240 (1982)
L. ----. ----., Respondent,
v.
D. ----. ----., Appellant.
No. 12222.
Missouri Court of Appeals, Southern District, Division Two.
March 1, 1982.
*241 David T. Greis, Kansas City, for appellant.
Donald E. Sotta, Joplin, for respondent.
MAUS, Chief Judge.
The marriage of appellant-mother and respondent-father was dissolved in 1974. The appellant is a lesbian. She stated she had, at different times, been involved in a homosexual relationship with four women. At the time of the hearing in this case, she had maintained such a relationship with K. C. for four years. The fact the mother was a lesbian was an issue in the dissolution proceedings. The father was given custody of their four children, ages 3 years to 9 years. The appellant was given the right of reasonable visitation. That same year the decree was modified to provide specific visitation from noon on Saturday to 6:00 p. m. on Sunday on the first and third weekends of each month. Subsequently, it was mutually agreed that one child, in rotation, could spend the second weekend of each month with the mother.
By the motion to modify in this case, the appellant seeks custody of the two younger children. By his counter-motion, the father seeks termination of the mother's visitation. After an extended hearing, the trial court made extensive and detailed findings of fact. Then, upon a sagacious analysis of the law, the trial court denied the appellant's motion and reduced and limited her visitation as will be hereinafter noted. The appellant first contends the trial court erred in not awarding her custody of the two younger children.
It is fundamental that a custody decree shall not be modified unless the court finds "upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child". § 452.410, RSMo 1978. To meet that criterion, the appellant cites four factors. She first asserts the present environment of the children is unhealthy for them and she points to the father's lack of demonstrable affection. Her evidence on this point consisted of conclusory statements that the father was unemotional and did not appropriately praise the children. While the trial court made no specific findings on this assertion, the appellant's evidence is illusory and does not provide a basis for a change of custody.
The appellant next asserts the father interfered with her visitation. She refers to evidence that he moved without consulting or notifying her and did not give her his new residential phone number. There was evidence the move was made so the father could be close to his work and while the appellant was in the army. She did have his phone number at work. Interference with visitation can be a factor in determining custody. Christianson v. Christianson, 592 S.W.2d 505 (Mo.App.1979). However, the conduct of the father does not reach that proportion.
Thirdly, the appellant relies upon the expressed desire of the two younger children to live with her. At the time of the hearing she lived in a suitable residence with her lesbian lover K. C. The first of these two children stated that the appellant did not ask them to come and live with her. He explained that he and his brother talked *242 it over and on January 5 told her they wanted to live with her. He said he wanted to do so because he loved her more than his father. He added that his father made him play sports and that his step-mother said she did not want them living with her. He also said that he received but little praise and affection from his father. But, he said he got a lot of hugs and kisses from the appellant and from K. C. The second of these children said he loved the appellant more than his father. He had similar observations concerning praise and affection. He did state that the appellant did not discipline them.
In presenting this point, the appellant does not reconcile the testimony of the second child who unequivocally stated that before they told her of their decision, the appellant asked these two children to come and live with her. She also ignores the testimony of the next to oldest child as it pertains to the origin of this preference. This child stated that shortly after the first of the year, during visitation, the two younger children went into a room with the appellant and K. C. This child attempted to follow but was told by K. C. to go back out to the living room. When the two younger children came out, they "looked like they'd been crying. And then theyI sat down and asked them what was wrong now and they said they wanted to move up here". The father related that since that time the two younger children acted as if they didn't have to mind and threatened to tell their mother if disciplined. The step-mother said they were "just out of hand".
In determining the custody of a child the court is to consider all relevant factors, including, among other things, "[t]he wishes of a child as to his custodian". § 452.375(2). However, the wishes "of the child should be followed only if the welfare and interest of the child, as determined by all the evidence, are consistent with that preference". Kanady v. Kanady, 527 S.W.2d 704, 707 (Mo.App.1975). Further, "[i]n considering the wishes of the child, it is important to ascertain and evaluate the basis for these wishes, so that the court can properly place this element in its proper perspective in deciding what is in the best interest of the child". McBride v. McBride, 579 S.W.2d 388, 390 (Mo.App.1979). Considering the circumstances surrounding the formulation of these wishes, the trial court could have found the preference to militate against, rather than support, the appellant's position. In any event, considering all of the evidence, the expressed preference cannot cause an award of custody to the appellant to be in the best interests of the two children of tender years.
As the fourth factor the appellant asserts the father has alienated the two older children and will do likewise with the two younger children. Her argument on this point is primarily founded upon the fact the father showed the oldest child a love letter the appellant had written to her then lesbian lover. On appeal the appellant contends the trial court erred in admitting the letter. By evidence she presented, the appellant first placed this letter in issue. Her complaint it was inadmissible because written in 1972 or 1973 is not valid. The appellant contends the letter was shown because of malice and to alienate the child. In making that assertion she does not comment on the testimony of that child. This child stated that at the age of 13 he stopped visiting the appellant because "of the stuff I saw up there ... she was kissing other women and going to bed with them". He discussed these things with his father and was shown the letter. The father explained his action and the trial court accepted that testimony and found this was done with the intent to inform and educate the child of a situation which was troubling the child and not to deliberately alienate him. This court has no reason to reject that finding.
The appellant also complains because the next to oldest child is alienated. She places the blame for this alienation at the doorstep of the father. The appellant does not deal with the experiences to which she had subjected the child and to which the child adversely reacted. These included taking her to a church where she saw "[m]en holding hands and women kissing on each other" *243 and one "guy, he dressed like punk rock". The child also recalled that at this church two seventeen year olds approached the two younger children and asked them if they were sterile. She also had observed her mother and her lover walk around the house partially clad and in bed together. It was with this background that, when asked if she did not love her mother, the girl reluctantly replied, "[n]ot that much" and when asked why, "[b]ecause of what she is".
Alienation of a child from a parent by the intentional conduct of the custodial parent demonstrates a serious breach of parental responsibility. Christianson v. Christianson, supra. The same is not true of alienation which has its foundation in the conduct of the complaining parent.
The principal thrust of the appellant's argument is that the trial court erred because it denied her custody and reduced her visitation solely because of an unjustified, irrebuttable presumption that a homosexual is an unfit parent. By this argument she attempts to make determination of custody of these children a constitutional issue. She cites cases dealing with impermissible, irrebuttable presumptions, such as Cleveland Board of Education v. La Fleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1973); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1971). She also seeks to invoke the Equal Protection Clause as applied in Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), and the right of privacy as delineated in Eisenstadt, and as applied to marriage in Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). To form the basis for this attempt she presented the testimony of a social psychologist and a clinical psychologist that the children would not be adversely affected by living with the appellant and her lesbian lover. The trial court also received as expert evidence articles from various journals, portions of books, statistical studies, and resolutions dealing with homosexuals, their civil rights and in some instances, espousing their abilities to raise children. For an example of counterposing expert evidence on the subject and conclusions reached by Hearing Officer Cullen Coil, the Board of Curators of the University of Missouri, and Hon. Elmo B. Hunter see Gay Lib v. University of Missouri, 416 F.Supp. 1350 (D.C.Mo.1976), reversed 558 F.2d 848 (8th Cir. 1977). Of course, the trial court had the authority to find, and did find, this evidence presented by the appellant was not credible. Cusumano v. Outdoors Today, Inc., 608 S.W.2d 136 (Mo. App.1980). Moreover, the respondent presented the testimony of a clinical psychologist that it would be detrimental to the welfare of the children for them to live with the appellant and her lesbian lover. Appellant contends this psychologist was not qualified because he stated he had only average familiarity with scientific literature relating to homosexuality. His answer has reference to average familiarity for a psychologist. "The extent of an expert's experience or training in a particular field goes to the weight of his testimony and does not render his testimony incompetent." In Interest of C. L. M., 625 S.W.2d 613, 615 (Mo.banc 1981).
Almost as a lamentation, the appellant insists this court must not condemn homosexuals. It is not the function of this court to do so. This court knows of no authority, even that cited in Gay Lib v. University of Missouri, supra, that does not view the homosexual with bewildered compassion. However, homosexual practices have been condemned since the beginning of recorded history. Doe v. Commonwealth's Atty. for City of Richmond, 403 F.Supp. 1199 (E.D.Va.1975); affirmed 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). Such practices are not within the privacy of a marriage as discussed in Griswold v. State of Connecticut, supra. Nor are such practices protected by the constitution. Doe v. Commonwealth's Atty. for City of Richmond, supra. Also see Wainwright v. Stone, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). Deviate sexual intercourse with another person of the same sex is a crime in the State of Missouri. *244 § 566.090(3), RSMo 1979. That statute is constitutional. Cyr v. Walls, 439 F.Supp. 697 (D.C.Texas 1977). Also see Mississippi Gay Alliance v. Goudelock, 536 F.2d 1073 (C.A.Miss.1976).
The appellant also makes the astounding plea to get the courts out of morality. This case does not, and most cases do not, determine the right of an individual to hold an abstract belief. This case determines the custody of children. Morality is always a factor in such cases. In re Marriage of J___ H___ M___, 544 S.W.2d 582 (Mo. App.1976); In re Marriage of B___ A___ S___, 541 S.W.2d 762 (Mo.App.1976). In dealing with a similar plea, Judge Gunn of the Eastern District, with wisdom and eloquence has said:
It is not our function to indite a revisionary preachment as to moral models. We do recognize that today we have changing standards of morality. Certain conduct once looked upon by society with opprobrium does not carry the social or private stigma it once did a few short years ago. Such conduct may even be socially `approved'. But private personal conduct by a parent which could well have an effect on children during the years in which their character, morality, virtues and values are being formed cannot be ignored or sanctioned by courts. Private conduct of a parent in the presence of a child or even under some other circumstances may well influence his or her young, impressionable life .... No matter how she or society views the private morality of the situation, we cannot ignore the influence her conduct may well have upon the future of this child and cannot give our judicial cachet to such conduct by etching in the law-books for all to read and follow. We see no salutary effect for the young child in exposing him to the mother's miasmatic moral standards. L. H. Y. v. J. M. Y., 535 S.W.2d 304, 308 (Mo.App.1976).
The appellant acknowledged that her plea is spurious by attempting to show the father had an affair with his secretary to establish his character and unfitness.
In her attempt to prevail on a constitutional basis, the appellant makes no attempt to demonstrate how her "life-style" could provide a home life in the best interests of the children. As noted, she lives with a lesbian lover. Evidence of their conduct in front of the children has also been recounted. In addition, there was displayed in the house a poster-sized photograph of two naked young females. Naked females were portrayed on the shower curtain and the toilet seat cover. The appellant had seen fit to explain her life-style to the two nine-year-old children. One said he understood and saw nothing wrong with it. The other said he didn't know what "gay" means. The appellant's life-style was well known in the community and there was evidence the children had been teased. The probable devastating effect of that life-style upon children has been established by the reaction of the two older children. When asked "[i]f you thought that you could keep your children, would you give up your life-style of being a homosexual," the appellant replied, "[n]o".
This evidence of the realities of appellant's life-style demonstrates that the testimony of her expert witnesses dealt with abstractions. It also strips the scientific literature of its facade of statistics and in its application to this case reduces it to nonsense. There may be cases in which it would not be error to place children in the custody of a practicing lesbian, but this is not the case. Compare M. P. v. S. P., 169 N.J.Super. 425, 404 A.2d 1256 (1979); Kallas v. Kallas, 614 P.2d 641 (Utah 1980); In re Jane B., 85 Misc.2d 515, 380 N.Y.S.2d 848 (1976); Bezio v. Patenaude, 81 Mass. 563, 410 N.E.2d 1207 (1980); Ashling and Ashling, 42 Or.App. 47, 599 P.2d 475 (1979). Also see Annot., Child CustodyHomosexual Parents, 6 A.L.R.4th 1298 (1981). Also compare M. K. M. v. L. E. M., 606 S.W.2d 179, 186 (Mo.App.1980) in which the court said:
Allowing that homosexuality is a permissible life stylean `alternate life style', as it is termed these daysif voluntarily chosen, yet who would place a *245 child in a milieu where she may be inclined toward it? She may thereby be condemned, in one degree or another, to sexual disorientation, to social ostracism, contempt and unhappiness. Appellant Kathy stresses Dr. Buchanan's testimony that the child at this timeage 10 shows no ill effects from her present environment. Dr. Buchanan finds the child to be normal and well adjusted. The court does not need to wait, though, till the damage is done. If the child's situation is such that damage is likely to occur as her sexual awareness develops with the approach of young womanhood, the court may in a proper case remove her from the unwholesome environment.
The trial court did not deny the appellant's motion without finding the father's home to be suitable. Its findings included a determination that the step-mother treated the children fairly, disciplined them when needed, but did not abuse them. These findings of the trial court are supported by the evidence.
The trial court granted the appellant custodial visitations of the younger children on the first weekend of each month as detailed in its order. The appellant was also granted certain other rights of visitation including visitation in the respondent's home. These visitations were upon the conditions that neither K. C. nor any other female with whom the appellant may be living shall be in the children's presence or in the appellant's home during the visits and that no such female shall exercise any discipline or direction over the children or accompany the appellant when visiting the children in the respondent's home. The appellant's first contention is that she has a constitutional right to visit without those limitations. Without further elaboration, on the basis of the authorities previously cited, that contention is denied.
The appellant's next contention is based on § 452.400.2 which in part provides: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." The appellant argues that the above conditions are invalid because the trial court did not in haec verba conclude that visitations without those conditions would endanger the children's physical health or impair their emotional development. It is not necessary for the disposition of this case to determine if those conditions are restrictions upon visitation as that term is used in § 452.400.2. In some circumstances the findings of a court may make evident the legal conclusions reached by the court in entering its judgment. Berra v. Bieg Plumbing Co., Inc., 584 S.W.2d 116 (Mo.App.1979). The trial court's extensive findings of fact clearly carry the legal conclusion that any contact between K. C. or any other lesbian lover of the appellant and the children would, in fact, impair their emotional development. The trial court found these conditions appropriate to prevent such contact. If such conclusion is not sufficiently established by implication, this court may enter the judgment the trial court should have entered in that respect. Rule 84.14. Upon this record such a conclusion is reached. The limitations were properly imposed. In re J. S. & C., 129 N.J.Super. 486, 324 A.2d 90 (1974); N. K. M. v. L. E. M., supra; Niederkorn v. Niederkorn, 616 S.W.2d 529 (Mo.App.1981). The judgment is affirmed.
PREWITT, P.J., and HOGAN and BILLINGS, JJ., concur.