**S.E.G., Petitioner-Appellant,**

v.

**R.A.G., Respondent.**

**No. 50751.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 21, 1987.

Motion for Rehearing and/or
Transfer Denied Aug. 27, 1987.

Gale L. Toko, St. Louis, for petitioner-appellant.

Prudence L. Fink, Union, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant-Wife appeals from a ruling of the Circuit Court of Franklin County, Division VI, granting dissolution of the marriage of the parties. The issues on appeal involve custody of the parties' four minor children, division of the marital property, award of maintenance and attorney's fees. Along with the submission of appellant's and respondent's briefs, amicus curiae (American Civil Liberties Union) requested leave of the court to present its brief because of the civil liberties issues that touch this case. That brief addresses only those issues which pertain to the constitutional rights of homosexual parents of minor children who seek custody and/or unrestricted visitation.

In a light most favorable to the verdict, the facts of this case are as follows: Husband and Wife were married in 1973 when Wife was 16 and Husband was 20. They had four children, Sam, born August 4, 1973, Amy, born December 11, 1975, Hannah, born March 2, 1979, and Ruth, born November 19, 1982. Respondent (Husband) is a case worker (no formal degree) with Missouri Division of Family Services. Appellant (Wife) teaches natural child birth classes and baby-sits out of the family home in Union, Missouri. The parties separated in June, 1984. Both continue to reside in Union. On April 19, 1985, a decree of dissolution was entered granting custody of the four minor children, family home, maintenance and support to Wife. Ten days thereafter, on May 3, 1985, Husband filed motion for a new trial or amended judgment upon learning of his wife's homosexual relationship. On July 18, 1985, the order was amended granting primary custody of the minor children to Husband. We affirm.

■ Wife first contends that the trial court erred in failing to give proper weight to the Missouri statutory factors and Missouri common law for determining the custody of minor children. The trial court is vested with broad discretion in determining child custody. *Davis v. Davis*, 693 S.W.2d 879, 883 (Mo.App., E.D.1985). It is our principal concern, as is the trial court's, in awarding custody, to do so in the best interest of the children. *Williams v. Cole*, 590 S.W.2d 908, 911 (Mo. banc 1979). This standard is reiterated in the few Missouri cases on record dealing with a homosexual parent seeking custody. *J.L.P.(H.) v. D.J.P.*, 643 S.W.2d 865 (Mo.App., W.D. 1982); *L. v. D.*, 630 S.W.2d 240 (Mo.App., S.D.1982); *N.K.M. v. L.E.M.*, 606 S.W.2d 179 (Mo.App., W.D.1980).

■ We have reviewed the factors set forth in RSMo § 452.375 (1986). It is clear from the record that both parties are loving, caring parents. But one of the children, Sam, has stated his preference to live with his mother. Minor children's preference will be followed only if that preference is consistent with the best interests and welfare of the child. *L. v. D.*, 630 S.W.2d 240, 242 (Mo.App., S.D.1982). In addition, morality is always a factor in child custody cases. *L.H.Y. v. J.M.Y.*, 535 S.W.2d 304, 307 (Mo.App., E.D.1976).

In November, 1984, Wife met Kitty Ann Shelby (a/k/a "Airrow") at an Adult Children of Alcoholics meeting. In February, 1985, the two women became sexually involved. Both women define themselves as lesbians. Airrow resides in St. Louis but several times a week drives in to Union to spend the night with Wife. Airrow and Wife sleep in the same bed at the family home in Union and evidence indicates that the youngest child has on occasion slept with them. Airrow and Wife are open about their relationship with the children and the community.

■ Both sides presented evidence as to the effects of a parent's homosexuality on

the minor children in their custody. Wife, as well as the American Civil Liberties Union (A.C.L.U.), cite articles that indicate there are no significant differences among heterosexual parents and homosexual divorced parents and their children.[1] Of course, the trial court has the authority to find the evidence presented not credible. *N.K.M. v. L.E.M.,* 606 S.W.2d 179, 187 (Mo. App., W.D.1980). Since it is our duty to protect the moral growth and the best interests of the minor children, we find Wife's arguments lacking. Union, Missouri is a small, conservative community with a population of about 5,500. Homosexuality is not openly accepted or widespread. We wish to protect the children from peer pressure, teasing, and possible ostracizing they may encounter as a result of the "alternative life style" their mother has chosen. In the face of this argument, Wife cites *Palmore v. Sidoti,* 466 U.S. 429, 433, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984), where it was held "the Constitution cannot control such prejudices but neither can it tolerate them." *Palmore* involved an interracial marriage where the mother was seeking custody of her child in her own interracial home. We do not agree that *Palmore* applies to the situation at hand. Homosexuals are not offered the constitutional protection that race, *Anderson v. Martin,* 375 U.S. 399, 84 S.Ct. 454, 11 L.Ed.2d 430 (1964), national origin, *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and alienage, *Graham v. Richarson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) have been afforded. *Bowers v. Hardwich,* —— U.S. ——, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). *See also State v. Walsh,* 713 S.W.2d 508, 511 (Mo. banc 1986).

■ Wife contends that homosexuals have parental rights as well as heterosexuals, and that those rights cannot be denied solely on the basis of Wife's lesbian relationship. There must be a nexus between harm to the child and the parent's homosexuality. It has been held, however, that "these rights will fail in the face of evidence that their exercise will result in emotional harm to a child or will be detrimental to the child's welfare." *N.K.M. v. L.E.M.,* 606 S.W.2d 179, 186 (Mo.App., W.D.1980). Wife and lover show affection toward one another in front of the children. They sleep together in the same bed at the family home in Union. When Wife and four children travel to St. Louis to see Airrow, they also sleep together there. All of these factors present an unhealthy environment for minor children. Such conduct can never be kept private enough to be a neutral factor in the development of a child's values and character. We will not ignore such conduct by a parent which may have an effect on the children's moral development.

This analysis is sufficient to answer the aspects of Wife's and A.C.L.U.'s constitutional arguments. We find no persuasion in Wife's citation of cases from other states favoring homosexual parental custody or unrestricted visiting privileges.[2] *J.L.P. (H.) v. D.J.P.,* 643 S.W.2d 865, 871 (Mo. App., W.D.1982). Custody shall remain with the father. This point is denied.

■ In her second point, Wife contends that the trial court erred in finding that Husband was not an alcoholic and did not sexually abuse his children. It can be gleaned from the record that Wife, upon threat of divorce, encouraged Husband to admit himself to a treatment center. Husband entered White Deer Alcoholic Treatment Center where he was treated for about a month. However, Dr. Beach, who does the alcoholic intake evaluations at Jefferson Barracks Hospital, testified there were no objective or medical indicia of alcoholism in Husband's records at White Deer Center. Dr. Beach testified that Husband was not an alcoholic. Husband admitted at trial that he was an alcoholic but has not had a drink since May, 1984. We defer to

---

1. *See* Herrington, *Children of Lesbians, Developmentally Typical,* Psychiatric News, Oct. 19, 1979, at 23; Green, R., *The Best Interests of the Child With a Lesbian Mother,* Bulletin of AA PL, Volume 10, No. 1, 1982, at 7–15.

2. *See Nadler v. Superior Court,* 255 Cal.App.2d 523, 63 Cal.Rptr. 352, 353–4 (1967); *Bezio v. Patenaude,* 381 Mass. 563, 410 N.E.2d 1207, 1215–16 (1980); *S.N.E. v. R.L.B.,* 699 P.2d 875, 878–9 (Alaska 1985).

the trial court to determine the credibility of the witnesses and to draw conclusions where there is conflicting testimony. *S.G. Adams Printing Co. v. Central Hardware Co.*, 572 S.W.2d 625, 628 (Mo.App., E.D. 1978).

Upon review, we find no evidence of child molestation by Husband. Wife's allegations are clearly unsubstantiated. None of the testifying experts could identify these children as victims of sexual abuse. In child custody cases, the evidence is permitted to take a wide range, and the trial courts can presumably sort out the incompetent and the irrelevant. *N.K.M. v. L.E.M.*, 606 S.W.2d 179, 187 (Mo.App., W.D.1980). The trial court did not err in finding Husband was not an alcoholic or a child molester. These points are denied.

■ Thirdly, Wife and A.C.L.U. argue that the trial court erred in restricting her visitation on the grounds that she is a homosexual. In the few cases in our state dealing directly with the problem of a homosexual parent seeking primary custody, all courts have awarded custody to the non-homosexual parent, and restricted the homosexual parent's visitation rights, again relying on the impact upon the child. *J.L.P.(H.) v. D.J.P.*, 643 S.W.2d 865, 871 (Mo.App., W.D.1982). We are not presuming that Wife is an uncaring mother. The environment, however, that she would choose to rear her children in is unhealthy for their growth. She has chosen not to make her sexual preference private but invites acknowledgment and imposes her preference upon her children and her community. The purpose of restricting visitation is to prevent extreme exposure of the situation to the minor children. We are not forbidding Wife from being a homosexual, from having a lesbian relationship, or from attending gay activist or overt homosexual outings. We are restricting her from exposing these elements of her "alternative life style" to her minor children. We fail to see how these restrictions impose or restrict her equal protection or privacy rights where these restrictions serve the best interest of the child. *L. v. D.*, 630 S.W.2d 240, 245 (Mo.App., S.D.1982).

These limitations were properly imposed. This point is denied.

■ Finally, Wife argues that the trial court erred in failing to consider the separation agreement and statutory factors in determining the division of marital property, maintenance, and attorney's fees. The trial court makes the distribution of marital property as it deems just. *Witzel v. Witzel*, 727 S.W.2d 214 (Mo.App., E.D.1987). This court recognizes that neither party is in a comfortable economic position. Husband's net monthly income is $994.00. Wife earned approximately $400.00 per month teaching child birth classes and baby-sitting out of the family home.

The court properly awarded the family home to Husband who has the sole responsibility of caring for the four minor children. Husband's moderate income will barely cover all the expenses that arise with the daily care of four children. Although Wife no longer has a place to carry on her source of income, Wife presented no evidence to indicate that she is unable to find full-time employment. She has experience and training in natural child birth teaching and day-care and may now seek full-time employment. Wife failed to show that she cannot support herself and pay her attorney fees. Awards of attorney fees will not be overruled unless there is manifest abuse of discretion. *Bray v. Bray*, 629 S.W.2d 658, 668 (Mo.App., E.D. 1982). The trial court did not abuse its discretion. These points are denied.

The judgment of the trial court is affirmed.

STEPHAN and DOWD, JJ., concur.