745 S.W.2d 726 (1987)
G.A., Respondent,
v.
D.A., Appellant.
No. WD 39370.
Missouri Court of Appeals, Western District.
December 29, 1987.
Motion for Rehearing and/or Transfer to Denied February 2, 1988.
Application to Transfer Denied March 15, 1988.
*727 Leonard K. Breon, Breon & Leffler, Warrensburg, for appellant.
Ralph H. Gaw, Tipton, for respondent.
Before KENNEDY, C.J., and TURNAGE and LOWENSTEIN, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied February 2, 1988.
TURNAGE, Judge.
Gene A___ filed suit for the dissolution of his marriage with Dena A___ and for custody of their son Curtis. The court dissolved the marriage, divided the property, and awarded custody of Curtis to Gene.
Dena contends on appeal that the welfare of Curtis would be better served by awarding her custody and that the court should have made such order even though she is a lesbian.
Gene and Dena were married in April of 1983 and separated October 1, 1984. At the time of trial, Curtis was living with his father in a small house located on a farm. Apparently Gene, his mother and a brother owned adjoining tracts on which each of them lived. At the time of trial, Gene was in the process of adding a room to his house so that Curtis would have a room of his own. Until the completion of that addition, Curtis was occupying a separate room in his grandmother's trailer.
Dena was living in Columbia with her girl friend, Yvonne, and Yvonne's two daughters, ages 14 and 15. Although Dena said she did not advertise the fact that she was a lesbian, from her testimony it is apparent that she did not attempt to keep it a secret. Yvonne's daughters were aware of the relationship between their mother and Dena, and Dena testified that the girls handled the relationship the way they wanted to. She said that the girls were free to tell others about the relationship between Dena and Yvonne.
Dena said that she and Yvonne had a three bedroom house so that Curtis would have a room of his own. She said there was a preschool facility across the street from her place of employment where Curtis could stay during the day.
Dena's testimony was that Curtis would be better off with her because of her superior housing facility. Gene's testimony was that he could take care of Curtis between his mother and his brother and his brother's wife and, in addition, could give Curtis religious training. No mention was made by Dena of any religious training that she would make available to Curtis.
The court found that the best interest of Curtis would be served by giving his custody to Gene, stating that the fact that Dena was a lesbian tipped the scales in favor of Gene.
The trial court is vested with broad discretion in determining child custody, and unless this court is firmly convinced that the welfare of the child requires some other disposition, the decision will be affirmed. *728 Davis v. Davis, 693 S.W.2d 879, 883[11,12] (Mo.App.1985).
In S.E.G. v. R.A.G., 735 S.W.2d 164 (Mo. App.1987), the court considered the desire of a self-proclaimed lesbian to obtain custody of her children. The court noted that the mother and her lover showed affection toward one another before the children and slept together in the same bed. The court held that this presented an unhealthy environment for minor children because such conduct can never be kept private enough to be a neutral factor in the development of a child's values and character. Id. at 166[5].
As in S.E.G., Dena testified that she and Yvonne hugged in the presence of the girls. From her testimony, it was apparent that no attempt was made to keep her relationship with Yvonne secret but that such relationship was open and acknowledged to the girls. Likewise, Dena testified that, as far as Curtis is concerned, she thought he would have an advantage over the girls in handling her sexual preference if he were in her custody because he is younger and he would grow up with it.
The evidence was that Dena had one lover prior to her marriage and that she only got married to see if she could change her sexual preference. Since she and Gene separated, she had had two lovers, including Yvonne. Gene testified that Dena had moved seven times between their separation and the date of trial.
This court agrees with the observation in S.E.G. that a court cannot ignore the effect which the sexual conduct of a parent may have on a child's moral development. As in S.E.G., the environment into which Curtis would be thrust by granting custody to Dena would not be a healthy one. Dena's argument seems to be that this court should overlook her sexual orientation and award custody solely on the basis of which parent would provide the better house. There is far more to the welfare of the child than the physical condition of the house in which it lives. This court is convinced that the welfare of Curtis is better served by awarding his custody to Gene.
The judgment is affirmed.
KENNEDY, C.J., concurs.
LOWENSTEIN, J., dissents in separate opinion.
LOWENSTEIN, Judge, dissenting.
In regard to child custody there would appear to be a judicial policy in this state to conclusively presume the detrimental impact on a child from the parent's homosexuality. This dissent proposes the recasting of the presumption to be rebuttable. The homosexuality of a parent would be presumed to have a detrimental impact on parenting which could be rebutted by presenting credible evidence this trait would not damage or harm the child. This proposal is premised on a sense of fairness, so an unwritten, insurmountable obstacle may be effectively articulated and addressed by a litigant, and so courts deciding the best interests of children may do so with complete information rather than per se rules.
If there has been any doubt as to the issue of homosexuality being an absolute or conclusive presumption of detriment, the result in this case on these facts dispels that doubt. The court found the parents' suitability for custody to be fairly equal the mother's physical living arrangement superior. The presumed impact on the child of the mother's homosexuality, for which no evidence was presented, turned out to be the deciding factor. Starting with N.K.M. v. L.E.M., 606 S.W.2d 179 (Mo. App.1980), where a change of a daughter's custody to the father was sustained by this court, the possibility of detriment has been discussed by Missouri courts. The mother's homosexual friend broached the idea of this lifestyle to the 10 year old child. Id. at 185 and 186. The mother's friend had numerous bad habits. Despite expert evidence of the child's being well adjusted while with the mother, id. at 185, this court held the child, "... may be condemned, in one degree or another, to sexual disorientation, to social ostracism, contempt and *729 unhappiness." Id. at 186. (Emphasis added.) The opinion added the familiar language to the effect the court does not need to wait until the damage is done to correct the situation. Id.
In L___ v. D ___, 630 S.W.2d 240 (Mo. App.1982), the lesbian mother sought to dispel the "... irrebuttable presumption that a homosexual is an unfit parent." Id. at 243. The trier's disbelief of the expert testimony favorable to the mother was upheld, but the court went on to say the mother's personal conduct, "could well have an effect on children," during the formative years, "[P]rivate conduct of a parent in the presence of a child or even under some other circumstances may well influence" the child. Id. at 244. (Emphasis added).
In J.L.P.(H.) v. D.J.P., 643 S.W.2d 865 (Mo.App.1982), this court restricted the gay father's visitation with his son because of "potential harm" to the child because of the father's advocacy of a homosexual lifestyle. Id. at 868 and 869. (Emphasis added).
The case relied on by the majority, S.E.G. v. R.A.G., 735 S.W.2d 164 (Mo.App. 1987), speaks of the moral growth and best interest of the child being ill-served by custody with the mother living in Union, Missouri, a "small, conservative community with a population of about 5,500. Homosexuality is not openly accepted or widespread. We wish to protect the children from peer pressure, teasing and possible ostracizing they may encounter as a result of the `alternative lifestyle' their mother has chosen." Id. at 166. (Emphasis added).
Any doubt as to the irrebuttable or conclusive presumption based on what "may" or "possibly" result from a child in the custody of a homosexual parent, would, as said earlier, be here dispelled by an affirmance based on these facts. The mother provides the child with his own room in a well kept house, enrolls him in a pre-school, has a steady nursing job, cares about the child, and, despite sleeping with and occasionally hugging a woman, has stated under oath she would discourage her son from emulating her sexual preference. The father has limited education, an income of $6500 and lives in basically a one room cabin containing a toilet surrounded by a curtain; the child sleeps in a foldup cot by a woodstove and plays in an area littered with Busch beer cans, collected by the father's "slow" sister, who was ordered by the trial court not to care for the boy while alone. The 75 year old paternal grandmother helps care for the little boy.
To say it is in the best interests of this little boy to put him in the sole custody of the father, who was pictured leering at a girly magazine, solely on the basis of the mother's sexual preference, would be and is a mistake. To tip the scales solely on the basis of what "may" befall the child because of the mother's sexual preference results in this high stakes decision on the child's welfare being made on less than complete information and renders it suspect. The mother's bad points have been accurately recounted in the majority opinion, making the determination of custody a choice among very limited alternatives, all of which have imperfectionswhat is now called for is a commonsense decision which weighs the practical and known imperfections and baggage each parent brings to the child's welfare and development. Fort v. Fort, 12 Mass.App. 411, 425 N.E.2d 754, 759 (1981). Toward such a result in this case, the dissent proposes to reverse and remand to allow the mother to produce evidence to attempt to rebut the presumption of detriment arising out of her being gay. While the majority may argue there was no impediment to the mother presenting this type of evidence, given the goal of a direct and up front approach to this issue, it is the inclination of this writer to remand for presentation of evidence. That evidence may be in the form of expert opinion of the mother's lifestyle not adversely affecting the child; that she provides him with a good home; and, he has not or will not be tormented in Columbia, Missouri, by his mother's lifestyle. Doe v. Doe, 16 Mass.App. 499, 452 N.E.2d 293, 296 (1983). She may show the child has not been exposed to any deviant sexual acts and the child is properly adjusted and healthy. *730 Stroman v. Williams, 291 S.C. 376, 353 S.E.2d 704, 706 (App.1987). The trial court, in spite of the mother's burden on this point, should not be bound solely by the other parent's statement of not "feeling comfortable" with the situation, when there is no showing of deleterious effect on the child. M.S.P. v. P.E.P., 358 S.E.2d 442, 445 (W.Va.1987). See D.H. v. J.H., 418 N.E.2d 286, 293 (Ind.App.1981), where the court said "... we believe the proper rule to be that homosexuality standing alone, without any adverse effect on the welfare of the child does not render the homosexual parent unfit as a matter of law to have custody of the child." If the mother can show a lack of deleterious effect on the child, the consideration of an award of joint custody to these two very different people who obviously care for the child is in order. As Chief Judge Sanders wrote concurring in Stroman, supra, 353 S.E.2d at 706, this result "... should not be construed as implying our approval of the lifestyle of the mother."
With all the evidence here pointing to the best interests of the child being served in the mother's custody, her homosexual conduct should not automatically call for another result. The facts here cry out for custody to the mother, or, better yet, joint custody under § 452.375.1 RSMo. 1986, provided the mother can overcome the presumption. Beyond this case, an approach which allows litigants to fairly confront this issue and which allows courts to use complete information instead of speculation concerning potential harm should be encouraged.