**T.C.H., Respondent,**

v.

**K.M.H., Appellant.**

**No. 55783.**

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 26, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 6, 1990.

Application to Transfer Denied March 13, 1990.

thirteen-year-old daughter (daughter) and M., their eight-year-old son (son).

Mother raises four points of error. First, the trial court erred in granting custody of the children to father; because its "order was not based on substantial evidence, was against the weight of the evidence and resulted from an erroneous application of law." We disagree, because the record reveals substantial evidence to support the trial court's decision. Second, the trial court erred in denying mother "due process of law by failing to adopt and apply a 'clear and convincing' standard of proof." We disagree, because the court is deemed to have applied the requirements of § 452.375 * for determination of child custody. Third, the trial court erred "in failing to sua sponte appoint a guardian ad litem to represent the interests of the children." We disagree, because the trial court had no duty to sua sponte appoint a guardian ad litem. Fourth, the trial court erred "in awarding [mother] only $2,500 toward her attorney's fees and ordering her to pay court costs." We disagree, because the trial court's decision was not an abuse of discretion.

### Background

Mother and father were married on August 6, 1971. Daughter was born June 23, 1975, and son was born May 15, 1980. In August of 1982, mother moved out of the marital home and into the house of a female friend, J.L. (friend).

Father filed a petition for dissolution of their marriage in 1983. At the dissolution hearing, the primary issue was the custody of the children. The trial court did not allow father to present evidence of statements made to him by mother. These statements concerned a lesbian relationship between mother and friend. The trial court held that such statements were barred under existing Missouri case law as privileged communications between husband and wife. Mother was granted primary custody of the two children with visitation and temporary custody for father.

Leonard Frankel, Edward M. Roth, James P. Carmody, St. Louis, for appellant.

John Pleban, Karen Alanie Greenberg, St. Louis, for respondent.

GRIMM, Judge.

In this bench-tried case, K.M.H. (mother) appeals the trial court's decision granting T.C.H. (father) primary custody of S., their

* All references are to RSMo 1986, unless otherwise specified.

Father appealed the custody decree. The case ultimately reached the Supreme Court of Missouri. The court reversed the trial court's ruling on the admissibility of the statements made by mother to father. It held that the privileged communications between husband and wife must give way to the superior interest of the children's welfare in child custody cases. *T.C.H. v. K.M.H.*, 693 S.W.2d 802 (Mo.banc 1985). The judgment as it related to child custody and support was reversed and remanded for a new trial.

At the second trial, the court awarded primary custody to father with temporary custody and visitation for mother. The evidence from that trial will be discussed as it relates to the issues on appeal.

I

■ In her first point, mother contends that the trial court erred in granting primary custody of the children to father; because such an order "was not based on substantial evidence, was against the weight of the evidence and resulted from an erroneous application of law." She argues that "the record reveals no direct proof that [she] had engaged in a lesbian lifestyle, that she was in any way unfit to have primary custody, that the welfare of the children would be promoted by changing custody to [father] or that the children have suffered negative emotional or moral effects from [her] past transgressions."

Our scope of review in bench-tried cases is limited. A trial court's decree will be sustained on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). "The trial court is vested with broad discretion in determining child custody, and unless the [appellate] court is firmly convinced that the welfare of the child requires some other disposition, the decision will be affirmed." *G.A. v. D.A.*, 745 S.W.2d 726, 727 (Mo.App.W.D.1987).

We also observe that Rule 73.01(c)(2) requires us to give due regard to the trial court's opportunity to have judged the credibility of witnesses. Here, the trial court found that (1) mother was not a credible witness; and (2) father's testimony was credible. We view the evidence in light of these findings and the judgment entered by the trial court.

Mother admitted to one sexual encounter with friend and another instance of hugging and kissing her. Mother, however, vehemently denied throughout the proceedings that she is a lesbian. Despite her denials, the evidence and inferences reasonably drawn from the evidence are sufficient to support the trial court's finding that mother engaged in homosexual activities and has an ongoing homosexual relationship with friend.

Father testified that in the fall of 1982, mother told him that she was in love with friend, she and friend were "lovers", and "it was the best thing that ever happened to her." Mother also told father that she no longer had to work on her relationship with him, because "she's got [friend] now." In addition, father testified that friend told him that "she was sorry that it all happened," but she and mother were in love and were happy.

Further, Dr. Miller, a clinical psychologist, testified that prior to October 6, 1982, mother told her that she (mother) was a lesbian and that she (mother) and friend were "lovers." Also, Dr. Miller testified that mother was jealous of friend's "lesbian involvement" with another woman. Dr. Miller believed that even if father and mother had not been divorced, mother would have continued her relationship with friend.

Mother argued that she had only a brief affair with friend when she separated from father, because she was confused and looking for affection. Mother stated that she ended the relationship, because "it didn't seem right."

Inferentially, the evidence could lead to a different conclusion. Mother testified that from July 5 to 14, 1985, while father had the children, she spent "two or three" nights at friend's house. On the other hand, private investigators hired by father

testified that mother spent seven of those nights at friend's house; another night, the two stayed at mother's house. There was no evidence, however, as to where each slept within the houses.

In addition, a private investigator testified that mother and friend spent several nights together between July 10 and 16, 1987, as well as the nights of July 15, 16, and 17, 1988. Mother denied spending these nights with friend.

The trial court is in a better position to judge and weigh the credibility of the witnesses and the evidence. *See S.L.H. v. D.B.H.*, 745 S.W.2d 848, 849 (Mo.App.E.D. 1988). In evaluating conflicting testimony, we give great deference to trial courts. *Id.* Here, the trial court made a specific finding that father was the more credible witness and presented the more credible evidence. We cannot say that the record lacks substantial evidence to support the trial court's finding that mother has an ongoing homosexual relationship with friend.

The parties have not referred us to any case which holds that a homosexual parent is per se unfit to have custody of minor children. Nor has our research disclosed any. Rather, the rule appears to be that "[t]here must be a nexus between harm to the child and the parent's homosexuality." *S.E.G. v. R.A.G.*, 735 S.W.2d 164, 166 (Mo. App.E.D.1987). Here, the trial court found "that the relationship is having an ill-effect on the morality of the children and will continue to effect their well-being in the future." Custody was placed in father to minimize such effects.

The General Assembly abolished the presumption that a child of "tender years" should be placed with the child's mother. Rather, as between the parents, "no preference may be given to either parent ... for the sole reason that the parent is the mother or the father of the child, nor because of the age or sex of the child." § 452.375.3. The trial court is to "determine custody in accordance with the best interests of the child," considering all relevant factors. § 452.375.2.

Here, the trial judge interviewed the children in chambers in accordance with § 452.385. Each expressed a desire to live with mother. After the interviews, however, based on their statements and demeanor, the trial judge said that he could give no credence to daughter's testimony and only very little to son's. The judge was so disturbed by their testimony and attitude, he regretted that this court would not have the "opportunity ... to view the kids as they were in [the judge's chambers]." The trial judge felt that, as a result of prior contacts with mother's attorney, the children were more responsive to her attorney's questions, while they were unduly restrained when questioned by the court or father's attorney.

Father presented evidence of examples of the negative impact of mother's custody. First, mother admitted on cross-examination that she had slept with friend while the children were in the house. She was also unable to "say for certain" that she had not kissed friend on the lips or touched her affectionately in front of the children.

Second, father recounted several occurrences involving son. While on a trip together, son laid on a bed; said, "Here's how girls masturbate;" and gave a graphic demonstration. On another occasion in a bookstore, son indicated his familiarity with a book, *The Joy of Gay Sex.* Finally, while playing with his cousins, son assumed the role of a character named "Gay Ed." Various experts testified that these occurrences may be cause for concern and warranted investigation.

In addition, the evidence indicated a potential for future harm facing the children if mother retained custody. It is widely recognized that in determining where to place a child, a court may consider all factors affecting the child's welfare, including the reasonable likelihood of an adverse effect on a child if placed in particular surroundings. *See, e.g., Wilhelmsen v. Peck*, 743 S.W.2d 88, 92 (Mo.App.S.D.1987); *M.L.G. v. J.E.G.*, 671 S.W.2d 312, 315 (Mo. App.W.D.1984); *P.I.M. v. T.D.M.*, 665 S.W.2d 670, 672 (Mo.App.S.D.1984); *N.K.M. v. L.E.M.*, 606 S.W.2d 179, 186 (Mo.

App.W.D.1980); *L.H.Y. v. J.M.Y.*, 535 S.W.2d 304, 308 (Mo.App.E.D.1976).

Even if mother remains discreet about her sexual preference, a number of experts at the trial testified, and Missouri case law recognizes, that a parent's homosexuality "can never be kept private enough to be a neutral factor in the development of a child's values and character." *See G.A. v. D.A.*, 745 S.W.2d 726, 728 (Mo.App.W.D. 1987); *see also S.E.G. v. R.A.G.*, 735 S.W.2d 164, 166 (Mo.App.E.D.1987). "[A] court cannot ignore the effect which the sexual conduct of a parent may have on a child's moral development." *G.A.*, 745 S.W.2d at 728.

Another factor which influenced the trial court's decision was the series of lies told by mother. A parent's "morality is always a factor in child custody cases." *S.E.G.*, 735 S.W.2d at 165. "From time immemorial, truthfulness has been recognized as a cornerstone of morality." *L. v. N.*, 326 S.W.2d 751, 755 (Mo.App.S.D.1959). Here, mother admitted warning father that she would do whatever was necessary to keep the children, including lying about her relationship with friend. The evidence and her own admissions show that she did just that. She lied in her first deposition, as well as to the examining psychologists, a Deputy Juvenile Officer, and the trial court.

The trial court acknowledged in its findings that the psychologists and social workers testified that mother would be the better custodian. The trial court considered that testimony, but gave it little weight since (1) none of them believed mother to be a lesbian; and (2) they said their testimony would not be altered even if they believed she was a lesbian.

The trial court also compared the children's situation with mother to the environment father and his new wife could provide. The court-appointed psychologist who evaluated father found him to be fit for primary custody. The Deputy Juvenile Officer who investigated both family settings came to the same conclusion. This officer also suggested that if the children had spent the last five years in the primary custody of father rather than mother, they would be just as attached to him as they are now to her.

The evidence further showed that father interacted adequately and appropriately with the children. For daughter, he fosters more independence on her part than does mother. A doctor's evaluation of the children's stepmother described her as giving the children "a good deal of warmth, support, and assertiveness." She also has the most "direct and accurate" understanding of daughter. Overall, the environment with either father or mother promises the children "a great deal of warmth, compassion, and concern."

As indicated, each child expressed a desire that primary custody remain with mother. In Missouri, however, a child's preference is " 'followed only if the welfare and interest of the child, as determined by all the evidence, are consistent with that preference.' " *L. v. D.*, 630 S.W.2d 240, 242 (Mo.App.S.D.1982) (quoting *Kanady v. Kanady*, 527 S.W.2d 704, 707 (Mo.App.W. D.1975)). The trial court should also determine the basis for that preference. *L. v. D.*, 630 S.W.2d at 242. Here, the trial court put little or no credence in the testimony of the children. Moreover, it determined that their preference was not consistent with their best interest and welfare.

The trial court's decision placing the children in the primary custody of father was based on substantial evidence. Further, it was not an erroneous declaration or application of the law. Mother's first point is denied.

## II

■ In her second point, mother contends that the "trial court denied [her] due process of law by failing to adopt and apply a 'clear and convincing' standard of proof." She argues that a "heightened level of due process was mandated given the loss of liberty occasioned by a determination of continued custody and the stigma that would attach to a judicial determination of [her] sexuality, moral standing in the community and fitness to care for her children." She cites, as an example of a case requiring a "clear and convincing" stan-

dard of proof, *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

As mother acknowledges in her brief, *Santosky* is a termination of parental rights case, not a child custody case. Such a case involves "state" action, as the petition is filed by a juvenile officer. Missouri is in compliance with *Santosky*, for it requires "clear, cogent and convincing evidence" to terminate parental rights. § 211.447.2.

Here, mother's rights in the children are not being terminated. Rather, she retains her parental rights, although, as a result of the dissolution, in a more limited manner.

As previously indicated, § 452.375.2 sets forth the factors to be considered by the trial court in a custody determination. Absent evidence to the contrary, this court presumes that the trial court considered the relevant factors and decided the custody issue in accordance with § 452.375.2. *See McDowell v. McDowell*, 670 S.W.2d 518, 521 (Mo.App.E.D.1984). Mother's second point is denied.

### III

■ In her third point, mother alleges that the trial court erred in failing to sua sponte appoint a guardian ad litem to represent the children's interest. She argues, "[t]he [court's] decision to give the children's testimony no credence should have signaled to the court that the children were unrepresented and that a guardian ad litem was necessary to protect their interests."

A "court *may* appoint a guardian ad litem" for a child if the court finds it to be in the best interest of the child. § 452.490.4. (emphasis added). Similarly, § 452.423.1, RSMo Supp.1988 provides that "the court *may* appoint a guardian ad litem." (emphasis added). However, when "child abuse or neglect is alleged," the "court *shall* appoint a guardian ad litem." *Id.* Thus, there is no requirement that a guardian ad litem be appointed except where child abuse or neglect is alleged.

Here, neither party alleged child abuse or neglect. Nor did either party ask the trial court to appoint a guardian ad litem. The trial court did not abuse its discretion.

*See, e.g., Mildred v. Darryl*, 743 S.W.2d 111, 112 (Mo.App.W.D.1988). Point denied.

### IV

■ In her fourth point, mother contends that the trial court erred in awarding only $2,500 toward her attorney fees which totalled $22,475. She claims, "[B]y any of the factors to be considered under § 452.355, RSMo (1974), or as amended in 1988, [she] was entitled to a substantial award of attorney's fees."

Section 452.355 provides that a trial court may award reasonable attorney fees. *See Hogrebe v. Hogrebe*, 727 S.W.2d 193, 194–195 (Mo.App.E.D.1987). A trial court has "considerable discretion in the award of attorney fees, and may base its award or denial on relevant factors other than the financial resources of both parties." *Matheus v. Matheus*, 612 S.W.2d 907, 908 (Mo.App.E.D.1981). *See, e.g., Hogrebe*, 727 S.W.2d 193 (acts of party which would not normally require attorney fees); *Hemphill v. Hemphill*, 710 S.W.2d 438, 439 (Mo.App.E.D.1986) (marital misconduct); *In re Marriage of Greene*, 711 S.W.2d 557 (Mo.App.S.D.1986) (unnecessary litigation).

"An award of attorney's fees is within the sound discretion of the trial court. Such an award will not be overturned absent a manifest abuse of discretion." *Hogrebe*, 727 S.W.2d at 194 (citation omitted). "When the amount awarded for attorney fees is questioned on appeal on grounds of inadequacy, the expertise of the trial judge, by reason of his unique position and familiarity with the issues, is entitled to considerable weight, and the fact that the trial court awards less than the amount billed by counsel is not ipso factor indicative of an abuse of discretion." *Budzinski v. Budzinski*, 632 S.W.2d 527, 531 (Mo.App.W.D.1982). We find no abuse of discretion. Point denied.

The judgment of the trial court is affirmed.

SATZ, P.J., and SMITH, J., concur.