**Aimee B. HELD, Plaintiff/Respondent,**

v.

**Roger C. HELD, Defendant/Appellant.**

No. 66226.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 11, 1995.

Thomas M. Dunlap, Whitlow, Riley, Mariea & Dunlap, P.C., Fulton, for appellant.

Walter D. McQuie, Jr., Montgomery City, for respondent.

PUDLOWSKI, Judge.

Roger C. Held (Husband) appeals the property distribution portion of the trial court's judgment dissolving his marriage to Aimee B. Held (Wife).

■ Our review is guided by the oft-cited principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). On review of a court-tried case, we sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or erroneously applies it. *Id.* at 32. It is the duty of the trial court to decide the weight and value given to the testimony of any witness. We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Nance v. Nance*, 880 S.W.2d 341, 343 (Mo.App.E.D.1994). We defer to the trial court, even if the evidence could support a different conclusion. *Id.*

Husband and Wife were married on April 1, 1978. There was one child born to the marriage, Carolyn Marielle Held, born September 17, 1985. Both Husband and Wife were high school graduates with limited college education. Wife has held various jobs, most recently she has been working at Farmers and Merchants Bank with a salary of Six Hundred dollars ($600.00) every two weeks. Until approximately 1990, Husband farmed with his father. At that time, Husband became a real estate broker and appraiser. In late 1992, he ceased doing appraisals because he just did not want to do it. He stated that he believed new licensing requirements were coming into effect. He did not want to meet the requirements for the appraiser's license despite having completed over two hundred classroom hours at Lindenwood College toward his degree in real estate appraising. He currently makes One Thousand Six Hundred Sixty–Six Dollars ($1,666.00) per month. Husband and Wife separated on December 28, 1992. Wife filed for divorce on December 29, 1992. On March 30, 1994, a trial was held and on June 22, 1994, the trial court entered its decree. This appeal followed.

Husband appeals the trial court's disposition of the marital property. He argues that the percentage of the marital estate each party received is evidence of an abuse of discretion. We disagree.

■ The division of marital property is governed by § 452.330 [1]. The trial court is vested with considerable discretion in dividing marital property and this court only interferes if the division is so unduly weighted as to amount to an abuse of discretion. *Bixler v. Bixler*, 810 S.W.2d 95, 100 (Mo.App. E.D.1991); *Cartwright v. Cartwright*, 707 S.W.2d 469, 474 (Mo.App.1986). Equal division of property is not required and disproportionate divisions are routinely affirmed. *Mika v. Mika*, 728 S.W.2d 280, 283 (Mo.App. 1987). We presume the order to be correct and the party challenging the division has the burden of overcoming that presumption. *Bixler v. Bixler*, 810 S.W.2d at 100. Describing the division of marital property in terms of percentages without examining the specific property each party was awarded, is meaningless. *Hernandez v. Hernandez*, 872 S.W.2d 161, 166 (Mo.App.W.D.1994).

■ The alleged disparity in the net awards is due, in large part, to Wife receiving the house as part of her property. Husband valued the house at an estimated value of One Hundred Ten Thousand dollars ($110,000.00). Wife testified that the value of the house was Eighty–Six Thousand dollars ($86,000.00). We find instructive the principle from condemnation cases that the purchase price of real estate, if not too remote in time, is competent evidence of the fair market value. *See State ex rel. State Highway Comm'n v. Schwartz*, 526 S.W.2d 952, 957 (Mo.App.1975); *State ex rel. State Highway Comm'n v. Crain*, 496 S.W.2d 867 (Mo.App. 1973). The purchase price of the home in November, 1991, slightly more than a year before the parties separated and two years and four months from the date of the trial was Eighty–Six Thousand dollars ($86,000.00). Estimating the value in a light most favorable to the court's decree, the value of the home was approximately Eighty–Six Thousand dollars ($86,000.00). Therefore,

---

1. All statutory references are to RSMo Supp. 1993 unless otherwise noted.

the percentages of the marital property awarded, to the extent they are enlightening, are significantly changed from those offered by Husband.

■ One of the factors listed in § 452.330.1 is the desirability of awarding the family home to the spouse having custody of children. The award of the home to the custodial parent reflects an appropriate reluctance to uproot the custodial parent and child by requiring its sale. *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 949 (Mo.App. E.D.1993) (*citing Mika v. Mika,* 728 S.W.2d at 284). Since Wife was awarded legal and physical custody of Carolyn, the trial court had a significant reason to award the marital home to Wife. Husband argues that the statute was designed for an unemployed wife. We find no support for this position in the statute nor in the case cited by Husband, *Vehlewald v. Vehlewald,* 853 S.W.2d 944. In both *Pursifull v. Pursifull,* 781 S.W.2d 262 (Mo.App.E.D.1989) and *S.E.G. v. R.A.G.,* 735 S.W.2d 164, 167 (Mo.App. E.D.1987), we find factual situations in which an employed spouse who had custody of children was awarded the marital home. Accordingly, we find this argument unpersuasive.

Another factor to be considered is the balance between income and non-income producing property. *Vehlewald v. Vehlewald,* 853 S.W.2d at 949. Here, the trial court awarded Husband all of the income producing property, namely, his interest in the real estate brokerage business, including listings, works in progress, accounts receivables, goodwill and the office equipment and furniture. The parties' home is a non-income producing asset. *Vehlewald v. Vehlewald,* 853 S.W.2d at 949 (*citing May v. May,* 801 S.W.2d 728, 734 (Mo.App.E.D.1990)). The equity in the house, though substantial, does not provide a steady income and is not readily accessible since Wife must maintain a home for herself and Carolyn.

Finally, we consider the evidence that husband squandered and/or mismanaged assets. One of the factors that the trial court must consider under § 452.330.1 is the conduct of the parties during the marriage. Harry Prior, a business partner of Husband, testified that Husband neglected business properties by failing to pay taxes and collect rent. The evidence is clear that the parties owed substantial federal and state taxes; yet Husband failed to sell a substantial amount of corn which was apparently in storage since he quit farming in 1990 or 1991. In addition, he quit the appraisal business because he did not want to do it. Husband allowed household bills to remain unpaid which resulted in discontinuance of utilities. He also had a bank loan, the collateral for which he lent to neighbors rent-free for several years. He did not know the amount of the loan at any given time nor did he know what the original amount of the loan was. Husband also allowed the rent on a storage unit which contained some of the parties' personal property to go unpaid resulting in the inability to access the property and an outstanding bill of approximately Two Thousand dollars ($2,000.00). Following separation, both Husband and Wife received funds from the sale of various properties. Wife applied the funds she received to household bills that had been left unpaid and other indebtedness which the parties had incurred jointly. It is unclear what Husband did with his portion of the funds but he stated that he did not apply any of it to the parties' indebtedness.

Considering all of these factors, we find that the trial court did not abuse its discretion in dividing the marital property. Given that wife received approximately Forty–Seven Thousand dollars ($47,000.00) of the debt on the house along with the house, and given her economic situation as compared to Husband's economic situation and his future ability to generate income, we find that the trial court did not abuse its discretion in its division of the marital property.

■ Husband next argues that if we affirm the award of the marital residence to Wife, as we have done, that she should bear the entire debt associated with the house. Husband was held responsible for any indebtedness associated with a Deed of Trust held by Esther and Carl Held, Husband's mother and father. There was conflicting testimony regarding the validity of this indebtedness. Wife claimed the money had been a gift to the couple. Husband and his father aver that it was a valid note and deed

of trust. Without expressly resolving the conflict in testimony, the trial court assigned responsibility for said debt to Husband. Further, it ordered that Wife is responsible for the other outstanding debt on the marital home owed to Jonesburg bank. In *Vehlewald v. Vehlewald*, 853 S.W.2d at 950, this court discussed the role that trial court's may assume in apportioning between the parties shares of the marital debt:

> Trial courts are not obligated to allocate marital debts. *Johnston v. Johnston*, 778 S.W.2d 674, 677 (Mo.App.1989). It, however, is a commendable practice and serves to eliminate future dissension between the parties. *Id.* Debts of the spouses are not marital property. *Id.* However, the existence of the debt and who has the responsibility for paying the same is a factor the trial court should consider in a fair division of the marital property. *Id.*
>
> Here, the trial court allocated all of the debts to either Husband or Wife. The trial court had that authority. *W.E.F. v. C.J.F.*, 793 S.W.2d 446, 457 (Mo.App.1990).

As in *Vehlewald*, we find no error in the trial court's allocation of the parties' debts. In light of the discussion, *supra*, regarding the value of the marital home and the conflicting testimony regarding the indebtedness to Esther and Carl Held, the trial court did not abuse its discretion in assigning responsibility for the debt allegedly owed to Esther and Carl Held to Husband.

■ Husband next claims that the trial court erred in failing to find certain property, including farm equipment, several household items and Six Thousand Five Hundred dollars ($6,500.00) in escrow relating to the sale of the "Little House" in Wright City, was non-marital because they were either the sole property of Carl Held or he had an ownership interest in the property.

■ No title certificates, no deeds, no receipts nor any other form of written ownership were offered by Husband or Carl Held. At trial, Wife and Cindy J. Burke, husband's Certified Public Accountant, testified that the farm equipment and the household items belonged to the couple or were the property of Husband. This directly conflicted with the testimony of Husband and Carl Held who testified that Carl Held had an ownership interest in the property, either exclusively or jointly with Husband. We defer to the trial court to determine the credibility of the witnesses and to draw conclusions where there is conflicting testimony. *S.E.G. v. R.A.G.*, 735 S.W.2d at 167 (*citing S.G. Adams Printing Co. v. Central Hardware Co.*, 572 S.W.2d 625, 628 (Mo.App. E.D. 1978)). Accordingly, with respect to the farm equipment and the household items, we find that the trial court did not abuse its discretion in finding the property to be marital.

■ However, in regard to the escrowed funds from the sale of the "Little House" in Wright City, we hold that there is no substantial evidence to support the court's determination that the funds were marital property. The only testimony that supported the determination that the "Little House" in Wright City was marital property was given by Harry Prior, in whose name the property was titled. Prior testified that he was initially partners with Carl Held and two or three days after closing "... we did a lot of trading of property back and forth and at that time, Carl felt and Roger felt that since we were partners on other property, that Roger would be my partner on that." Wife, herself, only testified to the fact that she was aware that the funds from the sale were in escrow. We are confronted by substantial evidence to the contrary including: 1) the contract for the purchase of the property in Carl Held's name; 2) an earnest money check from Carl Held for the property; 3) a check from Harry Prior to Carl Held for one-half of the purchase price; 4) a cashier's check drawn on Carl and Esther Held's account for the full purchase price; 5) a check signed by Esther Held allegedly for taxes in 1991 and 1992; 6) the testimony of Husband; and 7) the testimony of Carl Held. Therefore, we find that the trial court's disposition of the escrow money relating to the "Little House" in Wright City was against the weight of the evidence.

■ Husband's final point on appeal is that the trial court erred in making a distribution of marital property without knowing

the value of Wife's separate bank accounts and her retirement fund. We agree. There was insufficient evidence in the record for the trial court to value her retirement accounts. On cross-examination, Wife gave the following testimony regarding the retirement plan:

Question: Can you give me or the court any more assistance than you have as to the value of your retirement plan?

Answer: I am sorry, sir. I truly don't know the value of it or what it entails. I just know that it is supplied for me through the bank.

Q: Do you get a report on that periodically?

A: Sure.

Q: Have you received one since December of 1993?

A: Yeah. I toss them aside. They're sort of dry reading.

Q: Do you make contributions towards the plan?

A: I don't even know how that works, sir, no.

Wife had been employed at the bank, the source of her retirement plan, for approximately three years. She earned Three Hundred dollars ($300.00) per week at the time of trial, Fifteen Thousand Six Hundred dollars ($15,600.00) in 1993 and Eleven Thousand dollars ($11,000.00) in 1992. Based upon the lack of any valuation of the retirement account, we hold that there was no substantial evidence to support the trial court's disposition of the retirement fund.

We reverse and remand for a determination of ownership of the funds in escrow relating to the "Little House" in Wright City and for a valuation of Wife's retirement account. Upon ascertainment of the aforementioned, the trial court shall distribute the funds, if any, and apportion the retirement account, if any, in accordance with the prior distribution.

Affirmed in part, reversed and remanded in part.

SMITH, P.J., and WHITE, J., concur.