716 S.W.2d 866 (1986)
M.D.R., Respondent,
v.
P.K.R., Appellant.
No. WD 37319.
Missouri Court of Appeals, Western District.
September 16, 1986.
*867 R. Gregory Harrison, Liberty, for appellant.
Donald T. Norris, Kansas City, for respondent.
Before BERREY, P.J., and PRITCHARD and DIXON, JJ.
BERREY, Judge.
Appeal from a dissolution decree awarding custody of the parties' minor child to the husband, M.D.R. Wife, P.K.R., appeals, arguing that the circuit court erred because it based the custody award entirely on the evidence concerning her extramarital affair. She contends that the court misapplied the law because it focused on this one aspect of the evidence to the exclusion of all other relevant evidence.
The parties were married in Boone County, Missouri, on July 3, 1982. One male child, J.M.R., was born of the marriage on January 2, 1984. The parties separated briefly during February 1985, and the wife kept custody of their son. She and the child lived with her boyfriend's parents. One week after the first separation the parties reconciled for a few days. Wife admitted having had an extramarital affair, and continued to see her boyfriend. A few days after the first reconciliation, husband moved with their son into his parents' home. He filed a petition for dissolution on March 14, 1985.
The parties reconciled a second time in March 1985. They spent a week together at the home of husband's parents. Wife then disappeared with the child without notifying husband that she was leaving or where she would be living. She testified that she moved in briefly with her boyfriend's sister, and then moved to Olathe, Kansas, and lived with her boyfriend's aunt. On April 16, 1985, the court awarded temporary custody transferred to husband pending the final hearing on the dissolution.
Husband testified that during March and April 1985, wife refused to allow him to see their child and continued to see her boyfriend. After the court awarded him temporary custody, he and the child stayed with his parents in a trailer home. Husband's teen-age sister also resides there. His parents testified that they were willing to have husband and the child reside with *868 them and that they considered husband a fit and proper parent. Husband's mother said she would help care for the child and that the teen-age daughter would help babysit. Wife's sister testified that she raised wife, P.K.R., in her home from the time P.K.R. was thirteen years old until she and M.D.R. were married. In January 1985, P.K.R. asked her sister to allow her to move in with the child and continue seeing her boyfriend. Her sister refused. P.K.R.'s sister testified that she has observed husband with the child and that she considers him a fit and proper parent for the child.
Wife testified that after the temporary custody hearing, she moved into a studio apartment by herself. She works full-time at K-Mart and earns approximately $520 per month. She testified that she wants custody of her son, but would require three to four hundred dollars per month in maintenance and two hundred to two hundred and fifty dollars per month in child support to provide a good home for the child. Husband earns approximately $920.64 per month as a machine operator. At the time of the hearing, he and the child were residing with his parents and he had no housing expenses. He was providing health insurance coverage for the child through his employer. He requested $25 per week child support from wife.
The court found that wife engaged in extramarital sexual conduct during the marriage of the parties and in the presence of the child. It further found that the best interests of the child would be served by awarding custody of the child to husband, and it granted reasonable visitation rights to wife. The court ordered wife to pay child support of $25 per month and forbade wife to have sexual contact with anyone in the child's presence or to permit male guests to stay overnight while she is exercising her visitation privileges.
Wife argues, in this appeal, that the trial court erroneously declared and misapplied the law in granting custody to husband because the court based its award on wife's extramarital sexual conduct. She contends that by focusing on this one aspect of the evidence the court ignored the best interests of the child and misapplied the law. Further, because there was no evidence that the wife's relations with her boyfriend had a deleterious effect on the child, she argues, the court erroneously declared the law by implying that the extramarital relationship was sufficient grounds for determining custody. Most of the wife's argument focuses on remarks by the trial judge to counsel; absent those remarks the argument would not even be tenable.
The award of custody may not be used as a reward or punishment of either parent. Bashore v. Bashore, 685 S.W.2d 579, 581 (Mo.App.1985). In all cases, the court must determine custody in accordance with the "ultimate and sole test" of the best interests of the child. Id.; § 452.375.2, RSMo Supp.1984. Indeed, the "child's interests and welfare predominate over all other considerations in a custody dispute." In re Marriage of Noeltner, 569 S.W.2d 8, 10 (Mo.App.1978). The trial court has considerable discretion in awarding custody, and its judgment should not be disturbed unless the best interests of the child so demand. Bull v. Bull, 634 S.W.2d 228, 229 (Mo.App.1982). We accord great deference to its findings when, as here, they are not against the weight of the evidence. T.M.K. v. J.W.K., 667 S.W.2d 733, 735 (Mo.App.1984). Reversal of the custody award is justified only if we have the firm conviction that the judgment was wrong, that the decree had no substantial evidence to support it, was against the weight of the evidence, or erroneously declared or applied the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).
Rather than assume that the court based its determination exclusively on the wife's extramarital sexual conduct, we are entitled to presume that the court studied the evidence thoroughly and ordered what was in the best interests of the child. Fastnacht v. Fastnacht, 616 S.W.2d 98, 100 (Mo.App.1981). The presumption is based on the superior opportunity of the trial court to judge the credibility, sincerity, *869 and character of the witnesses, as well as other intangibles that might not be fully revealed by the record. Elfrank v. Elfrank, 605 S.W.2d 172, 173 (Mo.App.1980).
Intangible qualities such as mental and emotional fitness to be parents are difficult to measure. Extramarital sexual conduct alone is not sufficient to brand a parent unfit if there is no accompanying evidence that the conduct has had a detrimental effect on the child. Fastnacht, 616 S.W.2d at 100. But the court may consider, among other things, the moral fitness of the parents in determining who should have custody of the child. In re Marriage of Noeltner, supra, 569 S.W.2d at 10. The relevant concern is not just "the parents' licentious conduct, but the child's exposure to it," Id., and how "this conduct bears upon the custodial welfare of the child." (Emphasis supplied.) L.H.F. v. R.L.H., 543 S.W.2d 520, 523 (Mo.App.1976). The record here contains evidence that on at least one occasion during the marriage the wife left the child with a baby sitter overnight to spend the night with her boyfriend. The husband testified that the wife took the child without telling him, and that she and the child lived at different times with her boyfriend's parents, sister, and aunt. At the hearing, the wife admitted that her boyfriend visited with her in each of those locations. On two separate occasions when wife had custody of the child, according to the husband's testimony, she refused to let husband see the child. The issue for the trial court is not condemnation or approval of the parent's moral standard, but determination whether the conduct is a detriment to the child's welfare. Fastnacht, 616 S.W.2d at 100. There was sufficient evidence for the court to conclude that the wife's actions prior to the divorce did not demonstrate the maturity and judgment required to be a good parent.
From the evidence adduced at trial, the trial court could reasonably have found that the child's best interests would be served by awarding custody to husband, M.D.R. The award was supported by substantial evidence on the record.
Finally, respondent husband has filed a motion requesting the court to assess attorney's fees and costs against the mother as damages for frivolous appeal. A frivolous appeal, under Rule 84.19, is one which presents no justiciable question and is so devoid of merit on the face of the record that little prospect exists for success. Andrews v. Andrews, 673 S.W.2d 495, 500 (Mo.App.1984). This is not such an instance, as evidenced by the foregoing. The respondent's motion is denied.
Judgment affirmed.
DIXON, J., concurs.
PRITCHARD, J., concurs in result in separate opinion.
PRITCHARD, Judge, concurring in result.
At the time of the trial herein, May 29, 1985, the minor son, born of the marriage of the parties, was just a little over one year and four months old.
The mother admitted that she had sexual relations with another man on one occasion only when she spent the night with him before the dissolution proceedings were begun. On that night, she had delivered the son to his grandparents, so he was clearly not present during that assignation. The mother denied that she had sexual relations with the man after that first incident. All that the evidence shows is that the mother dated occasionally on weekends after the dissolution proceedings were done. There is no evidence at all that any extra-marital conduct (if that term means extra-marital sexual conduct) was carried on in the presence of the child. That finding of the court is not supported by any evidence, and thus cannot serve as a basis for award of custody.
The evidence, however, is that the child would be cared for in the father's parents' three bedroom trailer home by the father's mother, a pastor's wife, or by the father's little sister, while he was at work. In contrast, the mother offered no evidence of what kind of facilities she would have available *870 to care for the child. She resides in Liberty, Missouri, but must travel to Olathe, Kansas, each day where she is employed. Presumably, the child would be left with a baby sitter while she is at work. It would, therefore, seem to be in the best interests of the child that he be cared for in the home of his relatives, and for this reason, I concur in the result.