Brett & Erdel, P.C., Carla Wood Tanzey, Mexico, for plaintiff-appellant.

Wasinger, Parham, Morthland, Terrell & Wasinger, James D. Terrell, Hannibal, for defendant-respondent.

Jeanette **MILLARD**, n/k/a Jeanette **Golson, Plaintiff–Appellant,**

v.

Ronald **MILLARD,**
**Defendant–Respondent.**

No. 56405.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Nov. 28, 1989.

KAROHL, Presiding Judge.

On December 5, 1988 the court dissolved the marriage of the parties and granted husband the general care, custody and control of two sons born during the marriage. The boys were born on January 22, 1984 and December 1, 1985. The court provided "visitation," temporary custody for mother on alternate weekends from Friday through Sunday, specific holidays and six weeks during the summer of each year. The sole issue on appeal is whether there was substantial evidence to support the court's custody decision and whether it erroneously applied the law.

Section 452.375.2 expressly requires the trial court in a dissolution proceeding to "determine custody in accordance with the best interests of the child." That section also lists certain relevant factors to be considered by the trial court. Section 452.375.-2(1)–(6). None of the listed factors include immoral misconduct of a parent. However,

the listed factors are not comprehensive and exclusive. An extramarital relationship by a spouse is a factor in determining what is in the best interest of a child in the context of a custody award. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Such conduct does not disqualify a spouse from becoming a custodial parent, nor is the award of custody a matter of "reward" or "punishment" because of such conduct. *Id.* at 655. In the present case appellant mother acknowledges an extramarital affair. In addition, respondent father relies on other evidence to support the court's implied finding that it would be in the best interest of the children to be in the custody of their father.

We review mother's claim of error within the framework recited by our Supreme Court in *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). In *T.B.G.*, the court reviewed an award of custody in a case where this issue was contested. Without repeating all the rules set forth there, we note: (1) the standard of review which requires substantial evidence and a proper declaration and application of the law; (2) an admonition that before setting aside a decree on the ground that it is against the weight of the evidence we should exercise caution and do so only with a firm belief that the decree is wrong; (3) that due regard must be given to the opportunity of the trial court to judge the credibility of witnesses and its prerogative to believe or disbelieve all, part or none of the testimony of any witness; (4) in determining sufficiency of the evidence we must accept as true the evidence and inferences from the evidence that are favorable to the decree and disregard all contrary evidence; and, (5) where, as in the present case, no findings of fact or conclusions of law were requested we presume all fact issues to have been found in accordance with the judgment. *Id.* at 654.

Mother's general claim that the court erred in awarding custody to father is supported by two grounds: (1) the court disqualified her solely because of an extramarital relationship and, (2) the court failed to properly apply statutory factors set forth in § 452.375.2(4), (5) & (6) RSMo 1986.

Applying the proper standard of review and the rules by which we review this issue our study of the evidentiary facts supports a conclusion that the court did not err in the custody award.

We find in addition to the admitted extramarital affair there was sufficient evidence to support a finding that an award of custody to father was in the best interest of the children. First, there was affirmative evidence that father is a loving, caring and capable parent. He had been active in taking care of the children. Prior to the separation the children lived with their parents in a family home on a farm owned indirectly by father's parents. They will live there with their father. The home is located near to father's loving parents. Father had made arrangements for his mother and two baby-sitters to be available to the children, ages four and five, during his work hours as a farmer. In summary, there was no evidence which the court was required to believe which in any way disqualified father as a parent.

Second, there was a variety of negative evidence about mother. In addition to evidence of an extramarital affair there was evidence from which the court could find that the mother was less than an ideal parent. After separation she moved on three occasions. She did a number of things to hide the children from their father, including a refusal to disclose her resident addresses and by use of an unlisted phone number. She "negotiated" visitation or temporary custody privileges with father and his parents in order to obtain tangible benefits for herself rather than in consideration of the welfare of the children. In regard to the extramarital affair mother admitted that it occurred on a regular basis *in the home* where she and the children lived, including on the evening before the trial of the case. In addition, there was evidence that on at least one occasion she had denied temporary custody or visitation to father because one of the children was too ill, but thereafter took the children out of the home to be with her companion.

There is a considerable body of law that a parent's immorality, particularly where the children are exposed, supports an award of custody to the other parent. See, *Fastnacht v. Fastnacht,* 616 S.W.2d 98 (Mo.App.1981); *Wilhelmsen v. Peck,* 743 S.W.2d 88 (Mo.App.1987); *M.L.G. v. J.E.G.,* 671 S.W.2d 312 (Mo.App.1984). Of particular importance is the case of *M.D.R. v. P.K.R.,* 716 S.W.2d 866 (Mo.App.1986). In that case mother contested an award of custody to father on the basis of a claim similar to that made here by mother, that the trial court unduly relied on an extramarital affair to the exclusion of other factors. The court said, "rather than assume that the court based its determination exclusively on the wife's extramarital sexual conduct, we are entitled to presume that the court studied the evidence thoroughly and ordered what was in the best interest of the child." *Id.* at 868.

 Mother also contends the court erred in refusing to exclude witnesses to be called by both sides during the trial. The court denied the motion because the physical facilities for witnesses excluded from the courtroom were inadequate due to limited space. Mother acknowledges in her brief that enforcement of a rule regarding separation and sequestration of witnesses is a matter within the sound discretion of the trial court. This is a rule that should neither be arbitrarily refused or arbitrarily required. See, *Crews v. Kansas City Public Service Co.,* 341 Mo. 1090, 111 S.W.2d 54, 60 (1937). In the present case the trial began at 9:00 a.m. and concluded after 9:00 p.m. on the same day. There were many witnesses called in addition to the parties. The observation of the trial court regarding comfort of the witnesses and limitation of space for a period of twelve hours appears valid. More decisive on this contention is the fact mother acknowledges in the present case it is not possible to determine the ruling caused witnesses to change their testimony from what it would have been or that their testimony was in any way altered by their presence in the courtroom during the testimony of other witnesses. Point denied.

We affirm.

CRANDALL and HAMILTON, JJ., concur.