**Gregory O. RODRIGUEZ,
Plaintiff–Respondent,**

v.

**Angela G. RODRIGUEZ,
Defendant–Appellant.**

**No. 16521.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 27, 1990.

Motion for Rehearing or Transfer
Denied Dec. 17, 1990.

Ronald D. White, Williams, Robinson, Turley, Crump & White, Rolla, Joseph W. Rigler, Salem, for defendant-appellant.

James D. Sickal, Waynesville, for plaintiff-respondent.

PARRISH, Presiding Judge.

This is an appeal from an order granting a motion to modify a prior child custody order. This court affirms.

Angela Rodriguez and Gregory Rodriguez were married December 17, 1980. They have two children, Adam, born October 23, 1982, and Audrie, born June 13, 1985. Their marriage was dissolved by a decree of dissolution of marriage dated August 17, 1987, entered in the Circuit Court of Pulaski County.

Angela and Gregory were awarded joint legal custody [1] and joint physical custody of the children. §§ 452.375.1 and .2.[2] Joint physical custody was awarded as follows:

1. The two minor children of the parties shall be kept together in physical custody of the same parent at all times.

2. Husband shall have reasonable visitation rights with the minor children at the Husband's home and elsewhere, and in particular, Husband shall have the right to custody of said children for the first two weeks of each month, excepting the first weekend of each month. A week shall be defined as 6:00 p.m. on Sunday evening until 6:00 p.m. the following Sunday. A weekend shall be defined as 6:00 p.m. on Friday evening to 6:00 p.m. the following Sunday evening.

3. Wife shall have custody of the children at all other times during each month.

4. In the event either Plaintiff or Defendant is reassigned or otherwise moved or transferred from Ft. Leonard Wood, Missouri to another location, then both minor children, Adam Gregory Rodriguez and Audria [sic] Gail Rodriguez shall remain in the primary legal and physical custody of Defendant through the children's school term of approximately September through May, and shall remain in the primary legal and physical custody of Plaintiff during the children's summer school vacation of approximately June through August each year. Both Plaintiff and Defendant shall have reasonable visitation rights with the minor children during the time the children are in the primary care and custody of the other parent.

---

1. The parties had executed a separation agreement that the trial court that dissolved the marriage found to be fair and conscionable. § 452.325.4, RSMo 1986. Its terms were "incorporated into [the] Decree by reference." The parties were ordered to perform the terms of that agreement. Paragraphs 4 and 5 of the separation agreement related to decision making rights the parties shared regarding the children. Those paragraphs state:

4. The parties will confer on major issues regarding the children's training, education and rearing, but in the event of disagreement, the Wife shall make the final determination as to the questions of the children's education, religion, medical and dental care, and upbringing.

5. Husband and Wife shall advise each other of any serious illness or injury suffered by the children as soon as possible after learning of the same and shall direct all doctors involved in the care and treatment of the children to give each other all information regarding the illness or injury if either requests the same.

2. References to statutes are to RSMo 1986 unless otherwise stated.

On January 4, 1988, Gregory filed a motion to modify [3] the child custody order that was part of the decree of dissolution of marriage alleging that substantial and continuing changes had occurred with respect to the children and that modification of the decree with respect to its child custody order was necessary to serve the best interests of the children. § 452.410. Gregory alleged that Angela had adopted a lifestyle that was "not appropriate for the proper raising of children of tender years"; that the shared custody arrangement as provided by the decree of dissolution of marriage "proved unworkable ... disruptive, disconcerting, and counter productive as far as the children are concerned and has caused them serious emotional difficulties in adjusting to said circumstances." The motion to modify also stated that Gregory had remarried and could provide a home for the children "on a permanent basis." It alleged that Angela's actions had shown it to be in the best interests of the children for their care and custody to be awarded to Gregory and that Angela "should make a reasonable contribution towards the support of said minor children." The trial court granted the motion to modify and awarded physical custody of the children to Gregory "during that portion of the year in which public school is in session," and to Angela "during the non-school portions of the months of May, June, July and August annually." The "out-of-custody parent" was allowed visitation with the children "on the second (2nd) and fourth (4th) weekend of each month from 6:00 p.m. Friday to 6:00 p.m. Sunday," and on "all other reasonable occasions."

By her appeal Angela alleges that the trial court's order granting modification of the dissolution decree is against the weight of the evidence and is unsupported by substantial evidence. Angela further contends that the action by the trial court erroneously declared and applied the law. She argues that the evidence was insufficient to support "the necessary finding" that there were substantial and continuing changes in the circumstances of the children or of her circumstances so that the best interests of the children required a change in custody.

Appellate review of this case is undertaken pursuant to Rule 73.01(c) in that the case was a nonjury case. As construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), that rule requires "that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32. "An appellate court should set aside a judgment on the ground that it is against the weight of the evidence only 'with caution and with a firm belief that the decree or judgment is wrong.'" *Jun v. Murphy*, 763 S.W.2d 290, 294 (Mo. App.1988).

Findings of fact and conclusions of law were made by the trial court. Rule 73.-01(a)(2). Although Angela has not referred to the specific findings or conclusions of the trial court that she believes are erroneous, the following findings by the trial court relate to her complaint of trial court error.

*FINDINGS:*

.      .      .      .      .

3. There have occurred substantial and continuing changes in circumstances since the entry of the Decree on August 17, 1987, so as to require said Decree to be modified.

.      .      .      .      .

5. Defendant is a Sgt. (E–6) in the U.S. Army, currently stationed at Ft. Leonard Wood, Missouri. Defendant has moved several times since the dissolution. She and the two minor children (when they are with her) currently live in an apartment in Waynesville. Following the dissolution, Defendant lived for about one

---

**3.** Angela filed a "CROSS–MOTION TO MODIFY" June 20, 1988, in which she alleged "continuing and substantial changed circumstances undergone by the children in relation to their parents" that caused the children "to experience severe mental and emotional problems." Angela sought "full custody" of the children "with specific visitation rights of [Gregory] and increase in the amount of child support paid by Gregory."

and one-half months with one Dennis Schumer. Schumer is also a Sgt. (E-7) in the U.S. Army, stationed at Ft. Leonard Wood, Missouri. He has a four bedroom ranch style home in Dixon, Missouri. He has a twenty year old son and a fourteen year old daughter by a prior marriage living with him. Defendant and the two minor children continue to stay at Schumer's on occasion, including over night. Defendant and Schumer are informally engaged, but no definite dates have been set and no definite arrangements have been made for their marriage. The two minor children of the parties are aware that Defendant and Schumer are not married and that they sleep together when Defendant sleeps there. The children have seen Defendant and Schumer in bed together. When Defendant and the children are at Schumer's, Schumer's son has one bedroom, his daughter has another, Schumer and Defendant share a bedroom, and the two minor children of the parties share a bedroom, with the minor boy sleeping on a cushion on the floor. Defendant admits that living with Schumer has bothered the two minor children some, and she further admits that her living with Schumer is morally wrong. Defendant has no immediate plans to change her lifestyle and will continue to stay at Schumer's on occasion with the two minor children when she desires to.

.     .     .     .     .

7. The Court finds, and both Plaintiff and Defendant agree, that the current arrangement of joint physical custody is not working, that the children have suffered emotionally by moving from home to home every two weeks, and that the best interests of the children require that one parent be given the primary physical care and custody of the children during the school months, and the other given custody during the summer non-school months.

.     .     .     .     .

■ It is unnecessary to consider the trial court's findings, as expressed in either paragraph 5 or 7 quoted *supra*, as independent reasons for its conclusion that substantial and continuing changes in circumstances requiring modification had occurred since the entry of the original dissolution decree. This court may presume, and does presume, that the trial court studied all the evidence thoroughly and ordered what was in the best interests of the children. *M.D.R. v. P.K.R.*, 716 S.W.2d 866, 869 (Mo.App.1986). The record reflects, and the trial court found, a combination of circumstances that changed between the time the dissolution of marriage was granted and the dissolution decree was modified. One of those findings involved Angela's conduct, after the dissolution of the marriage of the parties to this action, with Dennis Schumer, conduct which Angela characterized as "morally wrong" and which "bothered the two minor children some." This conduct reflects on Angela's moral fitness and was properly considered, along with the other factors included in findings entered by the trial court, in determining who should have physical custody of the children. *Id.* It is unnecessary to launch a discourse on the extent of immorality required to deny a parent primary custody of children. It suffices to note that, if the requisites exist to modify the child custody decree, a trial court may consider, among other things, moral fitness of parents in determining who should have custody of the children. *Id.*

■ Considering the findings to which Angela's point on appeal relates, the following is gleaned from the record on appeal. Angela's living arrangement following the dissolution of her marriage to Gregory was unsettled. She first moved the children to an "efficiency apartment or room" known as Alpine House. She stayed there two or three weeks. She and the children then moved to the home of friends who lived "on Post" and who had an extra bedroom. She and the children stayed there "[a]bout a month." Angela then returned to the house where she and Gregory lived prior to the dissolution of their marriage. (Gregory had moved to an apartment.) She and the children stayed there

"[a]bout three weeks, a month, approximately."

Angela and the children next moved to a house which was owned by Dennis Schumer. She and the children shared occupancy of that house with Schumer, his twenty-year old son and fourteen-year old daughter "for about a month and a half." She and the children then moved to a trailer where they stayed "till January and the pipes busted and it flooded the trailer." Angela then moved, with the children, to a two bedroom apartment. She occasionally would stay at Schumer's house "[p]robably about two nights a month when I have my children with me." At the time of the trial of that part of the motion to modify directed to child custody, Angela expressed the intention to stay in the apartment. At the time of later proceedings involving other issues which are included in the transcript filed by Angela but which are not part of this appeal, the record reflects that Angela subsequently married Schumer and lives at his house with him and his two children.

Living accommodations at the Schumer house require that Angela's children, Adam and Audrie, when the children are there, share a bedroom. Adam sleeps on the floor on a cushion.

Since the dissolution of marriage, and prior to Gregory filing his motion to modify, Gregory testified that Adam and Audrie were affected in the following ways. "Their eating habit had changed quite a bit. I noticed poor appetite. I noticed a quickness in—especially in my son's temper. I noticed an impatient type of behavior in my little girl's attitude and that's when I acted.... I didn't let no time go on." Gregory expressed concerns about the effect Angela's living arrangement with another man had on the children, both when she was living at the other man's house and when she would have overnight visits there.

Angela also testified that the children had responded poorly to the custody arrangement as provided in the dissolution decree. When asked if she agreed that the "two week visitations as set out in the original decree" were not working, Angela answered, "Yes, I do." She described the effect on the children as, "They're very upset. They're beginning to, where they—they cry when they have to go back and forth. And I can understand that—that they—well, they're telling me that they don't want to go back and forth any more." She stated that the relations between Gregory and her were not keeping custody arrangements "normal between the kids and us and it's upsetting them."

If the trial court's determination is supported upon any reasonable theory by the law and the evidence, this court must affirm. *Watkins v. Johnson*, 606 S.W.2d 493, 495 (Mo.App.1980); *Snadon v. Gayer*, 566 S.W.2d 483, 491–92 (Mo.App.1978). Insofar as the evidence is conflicting, this court must accord deference to the trial court's findings based upon credibility. *Id.* at 491.

The trial court heard evidence that the children, during the time they were physically in Angela's custody, frequently moved between a variety of temporary residences following the dissolution of marriage, including one in which Angela shared the household with a man to whom she was not married; that after moving from that household Angela returned for overnight visits with the man, bringing the children with her; that when in that household, Adam slept on a cushion on the floor; that the custody arrangement whereby the children changed residences between Gregory's place of residence and Angela's "was not working." Both parents told the trial court of various adverse effects that the custody arrangement had on the children. All of the foregoing were changes in circumstances of the children that occurred after the custody order was entered in the dissolution case.

The evidence was uncontroverted that the very terms of the original custody order adversely affected the welfare of the children. The original custody order required that the children alternate between Angela's residence and Gregory's residence at two-week intervals. The trial court may have believed this to be a basis for changing the custody order. Other jurisdictions

have recognized that the breakdown of a joint custody arrangement, in and of itself, affords a basis to modify a custody order. In *In re Marriage of Stern*, 57 Wash.App. 707, 789 P.2d 807, 812 (1990), the Washington Court of Appeals pointed out that parental fitness, although a primary concern in a custody dispute, is not the sole concern, saying, "In a joint custody situation, however, the court must be equally mindful of the 'joint custodial environment' and whether changed circumstances have rendered joint custody unworkable and detrimental." *Stern* points to *In re Marriage of Murphy*, 48 Wash.App. 196, 737 P.2d 1319 (1987), as having established, under Washington law, "that a finding of detriment to the child in his or her present environment need not be based upon the parenting of either party, but may arise from a change in the joint custodial environment." *Stern*, 57 Wash.App. at 715, 789 P.2d at 812.

Oregon, by statute, provides that an unwillingness or an inability by one of the parents to continue to cooperate is sufficient to constitute a change of circumstances for purposes of modifying an original judgment setting custody and visitation.[4] *See also Heinel and Kessel*, 55 Or. App. 275, 279, 637 P.2d 1313, 1316 (1981), in which a similar result was reached prior to the adoption of the Oregon statute set forth in n. 4, *supra*.

This problem has been noted in at least one writing directed to issues in Missouri child custody proceedings.

In the past, appellate decisions have commented upon the negative effects which may result when children are frequently shifted back and forth between parents. In some situations courts have approved such shifting where it seemed to ensure a practical relationship with both parents. While it might appear that authorization for joint custody may have the effect of encouraging courts to be more willing to approve such shifts, at least one court has argued to the contrary in holding that such an award of "split custody" was detrimental to the welfare of the children and not authorized by the statute. The court concluded that the only options available were sole, joint, or third party custody.

J. Goldner, Missouri DISSOLUTION OF MARRIAGE, SUPPORT, AND CHILD CUSTODY § 17–22, p. 355 (1987) (footnotes omitted).

The findings of the trial court are supported by substantial evidence. Those findings do not constitute a misstatement or misapplication of law. The order of the trial court modifying the prior decree of dissolution of marriage is affirmed.

FLANIGAN, C.J., and HOGAN, J., concur.

---

4. ORS 107.169(5) provides:
   Modification of a joint custody order shall require showing of changed circumstances and a showing that the modification is in the best interests of the child such as would support modification of a sole custody order. Inability or unwillingness to continue to cooperate shall constitute a change of circumstances sufficient to modify a joint custody order.