**In re Marriage of JOHNSON.**

**Sherri Ranay JOHNSON, Petitioner–Appellant,**

v.

**Calvin Lyn JOHNSON, Respondent–Respondent.**

**No. 18589.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 16, 1993.

W. Swain Perkins, Thayer, for petitioner-appellant.

Ray Lee Caskey, Jeri Leigh Caskey, Alton, for respondent-respondent.

SHRUM, Judge.

Sherri Ranay Johnson brought this dissolution of marriage action against Calvin Lyn Johnson. Sherri[1] appeals from the portions of the decree by which the court awarded physical and legal custody of the parties' one child. We affirm the physical custody order. We reverse the joint legal custody order and remand to the trial court.

### PROCEDURAL SUMMARY

On June 29, 1992, Sherri filed a petition for dissolution of marriage in which she requested "the care, custody and control" of the child be awarded to her and that Calvin be granted "reasonable visitation privileges." On that same date Sherri filed a separate motion in which she requested "temporary custody" of the child. That motion, apparently never presented to the trial court, was not ruled on. In his answer and counter-

1. For convenience we refer to the parties and some other witnesses by their first names.

claim, Calvin asked the court to award him "full legal and physical custody" of the child.

The court heard testimony and received other evidence on September 23, 1992. The transcript of trial testimony exceeds 325 pages and records the testimony of Sherri, Calvin, the maternal grandparents, the paternal grandmother, five other persons called as witnesses by Sherri and eleven others called by Calvin. As we discuss Sherri's points on appeal, we present a summary of relevant testimony.

The trial court decree provides in pertinent part:

2. The parties are hereby awarded joint legal custody of their child. . . .

3. [Calvin] hereby is awarded primary physical custody of [the child].

4. [Sherri] hereby is awarded visitation with said child every weekend EXCEPT every third weekend, commencing at 6:30 p.m. on Friday and ending at 6:30 p.m. on Sunday.

. . . .

6. The parties shall share information with one another concerning the health, education, and welfare of their child, and upon the child entering school, both parents shall have access to all school records and reports. Either party shall have the authority to provide medical, dental, and other health care reasonably necessary for the welfare of the child, and each parent shall have access to all medical, dental, and health care records, reports and tests.

. . . .

9. The parties are hereby ordered to share the baby equipment as needed to facilitate visitation.

Sherri presents five points on appeal. In four of them she raises various challenges to the court's physical and legal custody orders. In her fifth point relied on, she complains that the trial court erroneously limited her cross-examination of one of Calvin's witnesses.

## STANDARDS OF REVIEW

Applicable standards of review are summarized as follows in *In re Marriage of Barnes*, 855 S.W.2d 451 (Mo.App.1993):

Our review of a dissolution decree is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Mistler v. Mistler*, 816 S.W.2d 241, 245[1] (Mo.App. 1991). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1].

When determining the sufficiency of the evidence, we accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989). All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2); *In Re Marriage of Dempster*, 809 S.W.2d 450, 456[4] (Mo.App.1991).

The phrase "weight of the evidence" means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics; it depends on its effect in inducing belief. *Johnson v. Gregg*, 807 S.W.2d 680, 685[1] (Mo.App.1991). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Murphy*, 536 S.W.2d at 32[2].

We give due regard to the trial court's opportunity to judge the credibility of the witnesses. Rule 73.01(c)(2); *T.B.G.*, 772 S.W.2d at 654. The trial judge may believe or disbelieve all, part, or none of the testimony of any witness, *Id.* at 654[1], and the court may disbelieve testimony even when uncontradicted. *In Re Marriage of Lewis*, 808 S.W.2d at 919, 922[3] (Mo.App. 1991).

We defer to the trial court's findings on custody matters unless we are convinced the best interests of the child require a different disposition. *O.J.G. v. G.W.G.*, 770 S.W.2d 372, 375[2] (Mo.App.), *cert. de-*

*nied,* 493 U.S. 992, 110 S.Ct. 540 [107 L.Ed.2d 538], (1989); *Heermance v. Heermance,* 706 S.W.2d 548, 551[5] (Mo.App. 1986).

855 S.W.2d at 454[1-6].

## DISCUSSION AND DECISION

*Physical Custody*

■ We first consider Sherri's challenge to the physical custody arrangements. Without designating it as such, the trial court awarded the parties "joint physical custody" as that concept is defined in § 452.375.[2] Although the child is to reside with Calvin and be under his care and supervision most of the time, the decree specifies in writing significant periods of time during which the child is to reside with Sherri or be under her care and supervision. Thus, despite the trial court's use of the descriptive terms *primary physical custody* and *visitation,* we characterize the physical custody arrangement as one of joint custody. *Nix v. Nix,* 862 S.W.2d 948, 951 (Mo.App.S.D.1993). *See Ibrahim v. Ibrahim,* 825 S.W.2d 391, 396[3] (Mo.App. 1992).[3] Therefore when Sherri complains that the trial court erred in awarding "primary physical custody" to Calvin, we view her complaint to be that the trial court erred in its apportionment of joint physical custody. *See Nix,* 862 S.W.2d at 951 n. 2.

We now summarize pertinent testimony. The parties married on August 3, 1991, when Sherri, age 17, was a high school junior and Calvin, age 18, was a senior. The only child of the marriage, a son, was born February 4, 1992. Both parties remained enrolled in school during the marriage, and Calvin worked part time.

Immediately following their marriage, the couple lived with Calvin's parents. In December 1991 they moved into an apartment in a public housing project in Alton where they continued to live until their separation on June 26, 1992.

The couple's apartment soon became a gathering place for many of their friends, especially for weekend parties, which often involved the consumption of alcoholic beverages. The child was taken to the home of Sherri's parents on party weekends. The director of the housing project testified that she discussed with Calvin and Sherri complaints she had received about excessive late-night traffic associated with the parties. Calvin's and Sherri's parents discussed their concerns about the drinking and the parties among themselves and, apparently, with Calvin and Sherri.

There was evidence Sherri did more "partying" and drinking than did Calvin. On one occasion, when Calvin suggested to Sherri that they ask their guests to leave the apartment, Sherri told him, "I'll divorce you if you go and tell them to leave." There was evidence that on several occasions Sherri would leave the child with Calvin at the apartment, telling Calvin she would be gone for a few minutes, and then return hours later. Sherri repeatedly requested Calvin to "go out," and she was unhappy because Calvin preferred to stay home with the child.

The couple separated after Calvin confronted Sherri with an accusation that she had engaged in oral sexual relations with two men. At first she denied the accusations but subsequently admitted to him that they were true. She told Calvin she had been intoxicated on each occasion. Immediately following Sherri's admission to him of extramarital sexual activity, Calvin left the apartment and moved into his parents' home near Birch Tree.

Aware that the couple was separating, Sherri's parents, on a Friday, took the child

2. Section 452.375.1(2), RSMo Supp.1990, provides:

"**Joint physical custody**" means an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent and continuing contact with both parents.

3. Our conclusion that the trial court awarded the parties joint physical custody is not affected by this court's recent opinion in *Ginos v. Bartlett,* 862 S.W.2d 494 (Mo.App.S.D.1993). In *Ginos,* this court rejected the argument, based on analogy to *Ibrahim,* that the trial court had awarded the parties joint legal custody. 862 S.W.2d at 496. Physical custody was not an issue in *Ginos.*

to their home seven miles from Alton. The following evening, Sherri visited the child at her parents' home, and on Sunday she left the apartment to live with them.

On the Sunday following the separation, Calvin and his mother went to the home of Sherri's parents to visit the child. They took the child with them and did not return him to the maternal grandparents' residence. The next day, Sherri filed her petition for dissolution. Calvin acknowledged that he wanted the child to be in his custody at the time a dissolution petition was filed.

Prior to the separation, both sets of grandparents assisted in the care of the child, with Sherri's mother apparently providing a substantial portion of the care. In the period between the filing of the petition and the trial, Calvin prepared the child's bottle and fed him, changed the child's diapers and bathed him, prepared him for bed, played with him, and transported him to and from the home of Calvin's grandmother who was the child's baby-sitter. Calvin acknowledged the assistance and advice he received from his mother in developing his parenting skills.

After her dissolution petition was filed and prior to trial, Sherri had the child at her parents' residence for two weekends, and she was allowed to visit the child on three occasions at the home of Calvin's parents. Several of Sherri's requests to see the child were denied, apparently because Calvin insisted any visits be arranged through the parties' attorneys.

As of the date of the trial, Sherri was a high school senior; Calvin had graduated and was employed. Calvin and Sherri still lived with their respective parents. There was evidence that after the separation Sherri spent much of her time on evenings and weekends congregating with other teenagers at the town square, often consuming alcoholic beverages. At trial, Sherri denied the accusations of sexual misconduct.

On appeal, Sherri develops three arguments against the physical custody arrangements: (1) the trial court placed undue emphasis on evidence of Sherri's sexual misconduct because there was no evidence the misconduct had an effect on the child; (2) the

physical custody arrangements are against the weight of the evidence relevant to the applicable factors set out in § 452.375.2; and (3) the physical custody award "causes the child ... to be shuttled between the parents and is not in the best interest of the child...."

■ In its decree the trial court stated its child custody decision was made "in light of all relevant factors, including the eight factors set out in § 452.375.2 RSMo...." Rather than assume the trial court based its determination solely on evidence of Sherri's misconduct, we presume the trial court studied all the evidence thoroughly and ordered what was in the best interest of the child. *Millard v. Millard,* 782 S.W.2d 93, 95 (Mo.App.1989); *M.D.R. v. P.K.R.,* 716 S.W.2d 866, 868[3] (Mo.App.1986). For Sherri to argue the trial court placed undue emphasis on evidence of her sexual misconduct is nothing but sheer speculation. She had the opportunity under Rule 73.01(a)(2) to request findings of fact on specific issues; she did not avail herself of that opportunity. Sherri's first argument against the physical custody award has no merit.

■ We turn now to Sherri's "weight of the evidence" argument in which she isolates certain of the factors set out in § 452.375.2 that she says are applicable and then recounts evidence relevant to each of those factors. Upon review of the entire record and under the various standards of review set out above, we do not have a firm belief that the apportionment of physical custody is wrong. The trial court could have concluded from the evidence that it was in the best interests of the child to spend the majority of his time with Calvin. By placing the child under the care and supervision of Sherri for 40 weekends a year, the decree assures the child of frequent and continuing contact with her.

■ Sherri relies on *Bashore v. Bashore,* 685 S.W.2d 579 (Mo.App.1985), as authority for her argument that the physical custody arrangements are not in the child's best interests because they require him to be "shuttled between the parents." For the reasons stated in *Marriage of Dempster,* 809 S.W.2d

at 456–57[6] (Mo.App.1991), *Bashore* does not apply.

Here, there is no more "custody shuttle" than there would be if the roles were reversed, that is, if the child resided with Sherri the majority of the time and with Calvin on weekends. If there is to be "frequent and continuing contact with both parents" as specified in § 452.375.1(2), transfers are inevitable. *See Marriage of Dempster*, 809 S.W.2d at 457. Here, the parties do not live far from one another. Sherri makes no argument, based on the facts of this case, that the physical custody arrangement is in any way disruptive to the child.

*Legal Custody*

■ We next examine the joint legal custody order. Section 452.375.1, RSMo Supp. 1990, defines *joint legal custody* as follows:

(1) **"Joint legal custody"** means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority;

In *Lipe v. Lipe*, 743 S.W.2d 601 (Mo.App. 1988), the court reversed a joint legal custody award because it was unsupported by substantial evidence. Applying a definition of *joint legal custody* identical to the current one, the *Lipe* court stated,

"Joint legal custody" means that the parents share the decision-making regarding important events in the child's life. . . . In *Brisco v. Brisco*, 713 S.W.2d 586 (Mo.App. 1986) [1, 2] the court set aside a joint custody award as against the best interests of the child. It stated there that "[b]efore a joint custody plan can be said to be in the best interests of the child, there should be some evidence in the record to support a finding that the parents are emotionally equipped to deal with each other as equal partners in the care of the child." This requirement would appear to be particularly apposite to an order for joint legal custody. In that situation the commonality of beliefs concerning parental decisions and the ability of the parents to function as a

unit in making those decisions assume critical proportions.

743 S.W.2d at 602.

Section 452.375 was substantially amended in 1988, after *Lipe* and *Brisco* were issued. Among the changes was an expression of a public policy preference for joint custody where such arrangement is in the best interests of the child. *Marriage of Barnes*, 855 S.W.2d at 455[7]. However, the preference stated in the 1988 amendment "is not that of a forced joint custody in order to induce the parents to find a common ground." *Margolin v. Margolin*, 796 S.W.2d 38, 49 (Mo.App. 1990). Rather, it is a preference "in favor of parents who show the willingness and ability to share the rights and responsibilities of child-rearing even after they have dissolved the marriage." *Id.* Thus, under our *Murphy v. Carron* standard of review, there remains the requirement, as stated in *Lipe* and *Brisco*, pre–1988 amendment cases, that there be substantial evidence to support an award of joint custody. *Marriage of Barnes*, 855 S.W.2d at 455.

The record before us is devoid of substantial evidence that the parties have a commonality of belief concerning parental decisions and the willingness and ability to function as a unit in making those decisions. We reject Calvin's argument that a lack of evidence of conflict between Sherri and him over their child's religious training, education, medical care, or other child-rearing principles equates to affirmative proof of their commonality of belief concerning parental decisions and their willingness and ability to function as a unit in making those decisions. The order of joint legal custody must be reversed and the cause remanded. The best interests of the child and the necessity for informed appellate court review require the parties to present evidence on the record to the fact-finder concerning their ability and willingness to function as a parental unit.

The lack of evidence about the parties' willingness and ability to function as a parental unit is understandable in this case for it is apparent from the pleadings and the trial transcript that neither party sought or con-

templated an award of joint legal custody.[4] On remand, the parties will have an opportunity to present evidence relevant to the appropriateness of joint legal custody.

In a separate point on appeal Sherri contends the joint legal custody award should be reversed because it does not include the written plan required by subsection 7 of § 452.-375, RSMo Supp.1990.[5] Our reversal of the joint legal custody order makes it unnecessary to address this point. On remand, Sherri will have an opportunity to suggest a plan she deems appropriate, in the event the trial court awards joint legal custody.

*Limitation of Cross–Examination*

■ In her fifth point relied on Sherri contends the trial court abused its discretion when it sustained an objection to a cross-examination question posed to Ruby Johnson, Calvin's mother. After Ruby testified that Sherri and Sherri's mother had been denied visitation with the child based on the advice of Calvin's attorney, Sherri's attorney asked, "Did you have any conferences with Calvin about the visitation in your home?" Calvin's counsel objected. Sherri's attorney argued to the court, "I have the right to inquire somewhere about the motive behind the denials of visitation during the pendency of this action." The trial court sustained the objection.

Sherri's argument on appeal, as we understand it, is twofold: the question would have revealed Ruby's true motive and thereby undermined her credibility with the trial court, and the court needed a complete understanding of "the physical arrangements of the child prior to the hearing" in order to determine the child's best interests.

■ Although a trial court is invested with a substantial measure of discretion as to the scope and extent of cross-examination of a witness, that discretion should not be exercised to deny absolutely the right to disclose collateral matters bearing on the witness's credibility. *Myers v. City of Palmyra*, 431 S.W.2d 671, 679[9] (Mo.App.1968). Assuming, without deciding, that the trial court erred in not permitting Sherri's attorney to explore any personal motive Ruby might have had for denying visitation to Sherri and her mother, such error had no effect on the court's determination of the best interests of the child. The manner in which the child came to reside with Calvin and his parents after the separation and prior to trial, Calvin's motives, and the instances of denial of visitation to Sherri and her mother were well established through the testimony of Calvin and other witnesses. The error, if any, could not have materially affected the result of the trial. *See Myers*, 431 S.W.2d at 680. Sherri's Point V is denied.

We reverse the portion of the decree that awards the parties joint legal custody of the child, and we remand for further proceedings on that issue. In all other respects, we affirm the judgment.

PARRISH, C.J., and MONTGOMERY, J., concur.

---

4. Sherri testified that she and Calvin twice discussed "having joint custody," once immediately before the separation and again immediately after. She said Calvin agreed to "joint custody." Calvin testified he and Sherri had a "discussion about having joint custody," stating, "She talked about it. I did not agree upon it." The fact that Sherri and Calvin spoke generally about joint custody does not provide evidence of their commonality of beliefs or their willingness and ability to share decision-making responsibilities.

5. Section 452.375.7, RSMo Supp.1990, provides:

Any decree providing for joint custody shall include a specific written plan setting forth the terms of such custody. Such plan may be suggested by both parents acting in concert, or one parent acting individually, or if neither of the foregoing occurs, the plan shall be provided by the court. The plan may include a provision for mediation of disputes in all cases, the joint custody plan approved and ordered by the court shall be in the court's discretion.