890 S.W.2d 688 (1994)
P.L.W., Petitioner-Appellant,
v.
T.R.W., Respondent-Respondent.
No. 19278.
Missouri Court of Appeals, Southern District, Division Two.
December 30, 1994.
*689 Steven Privette, Willow Springs, for petitioner-appellant.
Dale R. Engelbrecht, Henry, Henry & Engelbrecht, P.C., West Plains, for respondent-respondent.
PER CURIAM.
On September 30, 1992, the trial court entered a decree dissolving the marriage of Appellant, P.L.W. (Mother), and Respondent, T.R.W. (Father). In its decree, the trial court adopted the child custody provisions of the parties' separation agreement. As a result, the parties were awarded joint legal custody of the one minor female child, born July 7, 1991, with Mother to have primary physical custody and Father to have visitation rights from 9:00 a.m. until 5:00 p.m. each Saturday, and between the same hours on alternating major holidays. It also provided that when the child reached four years of age Father would have visitation every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m., two separate two-week visitation periods during the summer months, and alternating major holidays.
Mother filed a motion to modify the dissolution decree on January 20, 1993 in which she alleged that there had been a continuing and substantial change in circumstances, together with facts and circumstances which had been unknown to the trial court at the time of the decree, requiring a modification so as to restrict or eliminate Father's visitation with the child. In support, Mother alleged that Father "engages in the wearing of women's clothing, sometimes in the presence of third persons and frequently soils same with semen stains."
At the hearing on the motion, Mother described instances during their marriage when she discovered Father masturbating while wearing her dresses, and she also described his admissions about having done so on other occasions.[1] Another woman testified that Father borrowed one of her dresses and returned it with semen stains. Although it is not clear from the record, we gather that this occurred after the parties separated but prior to the dissolution of their marriage.
Father admitted the occurrences involving women's clothing described by Mother and the other female witness but contended that it had never occurred in the child's presence. He also testified that the instant motion was filed after he indicated to Mother that he *690 would not consent to the child's adoption by her boyfriend in the event they were married.
Mother admitted that she had known of this behavior prior to the dissolution of their marriage, but that it had not been presented to the court when the dissolution was heard because of her attorney's insistence that it was unnecessary.[2] She also testified that the provisions in the separation agreement concerning child custody, which were ultimately incorporated into the decree, reflected a compromise based upon her knowledge of Father's conduct, and that in presenting that agreement to the dissolution court, she had testified that the visitation privileges provided for Father were in the child's best interest.
The evidence indicated that the incidents involving Mother's clothing, although having occurred in the family home, were not in the child's physical presence because she was usually in another room asleep. Mother testified that she was unaware of any effect Father's conduct had had on the child and had not taken the child to a psychologist, physician or counselor. There also was no evidence that Father had committed acts of this nature since the dissolution or that any behavior had occurred when he was with the child which could be considered detrimental to her welfare.
The trial court denied Mother's motion to modify, finding that Mother had known of these incidents at the time of the dissolution and had testified that Father's visitation would be in the best interests of the child; that there was no evidence that Father's visitation with the child since the dissolution had in any way harmed her; that the evidence indicated the child had a good relationship with Father and enjoyed spending time with him; and that "there is no evidence that respondent's sexual behavior, which occurred outside the presence of the child, has endangered the child's physical health or impaired her emotional development." It also ordered that Mother pay Father $500 toward his attorney fees.
Mother contends on this appeal (1) that the trial court erred in not restricting Father's visitation privileges because no negative effect on the minor child is required as a prerequisite for doing so, and (2) that it was an abuse of discretion to enter an award of attorney fees.
Our review of an order denying a motion to modify is governed by Rule 73.01,[3] as construed in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). In re Marriage of Amos, 843 S.W.2d 946, 950 (Mo.App. S.D.1992). Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Id.; Wilhelmsen v. Peck, 743 S.W.2d 88, 94 (Mo.App.S.D.1987). In considering the sufficiency of the evidence, we accept as true the evidence and inferences therefrom that are favorable to the trial court's decree and disregard contrary evidence. In re Marriage of Johnson, 865 S.W.2d 412, 414 (Mo.App.S.D. 1993).
The trial court has broad discretion in determining matters involving child custody and that decision will be affirmed unless the appellate court is firmly convinced that the welfare of the child requires some different disposition. T.C.H. v. K.M.H., 784 S.W.2d 281, 283 (Mo.App.E.D.1989). See also In re Marriage of Johnson, 865 S.W.2d at 414; In re Marriage of Amos, 843 S.W.2d at 950. We proceed on the presumption that the trial court studied all of the evidence thoroughly and decided the custody matter in the manner it believed would be in the best interests of the child. L.H.Y. v. J.M.Y., 535 S.W.2d 304, 306 (Mo.App.E.D.1976). The reason for this presumption is that the trial court is in a better position to judge the credibility of witnesses as well as their sincerity, character and other intangibles which may not be revealed by the record. Id.
*691 Section 452.410.1[4] provides, in part:
[T]he court shall not modify a prior custody decree unless it ... finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.
As recognized by the trial court, however, § 452.400.2 applies where, as in the instant case, the issue is whether visitation privileges should be restricted as opposed to whether custody should be transferred. See Feese v. Feese, 613 S.W.2d 882, 887 (Mo.App.W.D. 1981); L.L.T. v. P.A.T., 585 S.W.2d 157, 159 (Mo.App.W.D.1979). It provides, in part:
The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development.
Modification of a visitation order by terminating it or requiring that it be supervised has been interpreted as a restriction, within the meaning of § 452.400.2, thereby requiring the endangerment-impairment finding. See In re Marriage of Amos, 843 S.W.2d at 951-953. This is consistent with a number of cases in Missouri where the appellate court noted either the existence or lack of evidence indicating that a minor child had been or would likely be adversely affected by the conduct of a parent. See Shoemaker v. Shoemaker, 812 S.W.2d 250, 255 (Mo.App.W.D. 1991); Boschert v. Boschert, 793 S.W.2d 495, 497 (Mo.App.E.D.1990); Ryan v. Ryan, 652 S.W.2d 313, 315 (Mo.App.E.D.1983).
Mother argues in the instant case, however, that Father's behavior is a form of homosexuality and that Missouri courts have not required a showing that a child suffers from existing adverse effects before restricting a homosexual's visitation rights. She cites, as her only authority, J.P. v. P.W., 772 S.W.2d 786 (Mo.App.S.D.1989). In that case, a Texas court had awarded a homosexual father "possessory custody" of the child for ten days every other month. At the hearing on the mother's motion to modify, filed in Missouri, evidence was presented that the father and his homosexual lover not only continued to live together but also shared the same bed during the child's visits; that they would hold hands and kiss in her presence; and that the father believed it was healthy for the child to be exposed to his alternate lifestyle. There was also evidence that when the child returned from visits with her father, the mother noticed changes in her behavior described as a "clinging" and an unwillingness to let her mother leave the room. The trial court ordered that during the child's visits, neither the father's lover nor any other male with whom he might be residing could be present. This court, however, further modified the original decree by eliminating the temporary custody or visitation provisions, ordering that any visitation must be supervised, and remanding the case for a determination of the circumstances which would be appropriate for periodic, supervised visitation. In doing so, however, it said:
The father is an avowed and practicing homosexual who believes that it is in the best interests of the child that she be exposed to such activity. He believes that his homosexual lover should participate in the child's development. The father and his homosexual lover have displayed homosexual activities by holding hands and kissing in the child's presence. The condition of the child when returned from visitation in their apartment has been noted. It is found that unrestricted visitation by the father would endanger the child's mental health and emotional development.
Id. at 794.
The J.P. v. P.W. case is not unlike other Missouri cases in which our courts have restricted visitation or transferred custody where homosexual behavior occurred in the presence of the child, the parent's attitude indicated a desire or willingness to expose the child to their lifestyle, or there was a direct, demonstrable effect on the child's welfare. See S.E.G. v. R.A.G., 735 S.W.2d 164 (Mo.App.E.D.1987); L. v. D., 630 S.W.2d 240 *692 (Mo.App.S.D.1982); N.K.M. v. L.E.M., 606 S.W.2d 179 (Mo.App.W.D.1980). In J.L.P. v. D.J.P., 643 S.W.2d 865 (Mo.App.W.D.1982), the court affirmed the trial court's order that a homosexual father's visitation with his eleven-year-old son be restricted. The appellate court noted that "the child's physical or emotional welfare is threatened by the activities and conduct of the father, which affords a sufficient basis for the trial court to restrict the visitation of the father pursuant to § 452.400.2, RSMo 1978." Id. at 869. This conclusion, however, was based on evidence that the father lived with another homosexual male, took the child to a church made up largely of homosexual members, advocated a homosexual lifestyle, had discussed his lifestyle with his son, and the child had experienced increased episodes of bedwetting.
We believe the instant case is distinguishable, however, in that here there was no evidence that Father has continued the practices referred to since the dissolution, that such practices ever occurred in the presence of the child, that this behavior has affected the child in any way, or that there had been any conduct after the dissolution which could be construed as threatening to the child's physical health or emotional development. The evidence indicated that Father was attentive and caring during the relatively brief times he was permitted to be with the child on Saturdays.[5] Additionally, after having lived with Father and known of the behavior which she now contends is a threat to the child, Mother agreed to the visitation privileges now attacked and testified that they were in the child's best interests approximately three months before filing the instant motion to modify.
Mother admits that no authority was found categorizing Father's conduct as homosexual. Other courts have, however, spoken of bizarre sexual behavior creating concerns with reference to child custody. In M.P. v. S.P., 169 N.J.Super. 425, 404 A.2d 1256, 1263 (App.Div.1979), the court said:
Although plaintiff's sexual behavior cannot, perhaps, be categorized in terms which are as emotionally charged as "homosexual" or "lesbian," it is so far out of the ordinary as to create the most acute anxieties about entrusting so troubled and deviant a personality with the responsibility of creating an environment for the upbringing of two young girls.
These concerns are consistent with the following language from L.H.Y. v. J.M.Y., 535 S.W.2d at 308, involving the effects of a homosexual parent on children:
[P]rivate personal conduct by a parent which could well have an effect on children during the years in which their character, morality, virtues and values are being formed cannot be ignored or sanctioned by courts. Private conduct of a parent in the presence of a child or even under some other circumstances may well influence his or her young, impressionable life.
We do not pass judgment on private morality in the absence of some societal interest. That is left to others. Our concern here is the best interest of the child. That is the polestar we are duty bound to follow.
In S.E.G. v. R.A.G., 735 S.W.2d at 166, the Eastern District of this court, in affirming an award of custody to a father, spoke of the effect of the mother's homosexuality on the children:
We wish to protect the children from peer pressure, teasing, and possible ostracizing they may encounter as a result of the "alternative life style" their mother has chosen.
Continuing, the court said:
Such conduct can never be kept private enough to be a neutral factor in the development of a child's values and character. We will not ignore such conduct by a parent which may have an effect on the children's moral development.
Although Mother's motion in the instant case prayed for an order either denying or restricting Father's visitation privileges, she argued in both the trial court and this court that rather than being terminated those privileges *693 should be restricted by being supervised. We note, however, that a supervised visitation will not prevent possible embarrassment to the child, as she grows older, caused by public revelations of this case or of Father's actions.
In the instant case Mother neither pled nor proved the essential element required by § 452.400.2 that the exercise of Father's visitation would endanger the child's physical health or impair her emotional development. The trial court, in denying relief, specifically found that there was no evidence that Father's behavior or visitation with the child had produced that effect. We do not take the evidence presented in this case lightly, but, based on the record before us, which we have carefully reviewed, and the standard of review by which we are bound, we are unable to conclude that the trial court erred in denying Mother's motion to modify.
In affirming the trial court's order denying the motion to modify, we note that it is apparent that Mother's motion and the trial court's ruling were directed at Father's current visitation privileges which are restricted to eight hours each Saturday and on alternating major holidays. We express no opinion about whether the result would be different if those visitation privileges are expanded, as is scheduled to happen, when the child reaches the age of four.
In her second point, Mother contends that the trial court abused its discretion in ordering her to pay $500 in attorney fees. The order was entered pursuant to the allegation, in Father's answer, that Mother's motion was unnecessary and unreasonable, was filed to harass or cause needless increase in the cost of litigation, and in which he requested sanctions, including attorney fees, pursuant to Rule 55.03. Father did not request attorney fees pursuant to § 452.355.1, which authorizes the award of attorney fees in proceedings under §§ 452.300-452.415 after consideration of "all relevant factors including the financial resources of both parties."
Under Rule 55.03(b), a party, by presenting a claim, contention or argument in a pleading or motion, certifies that to the best of that person's knowledge, information and belief, the claim, contention or argument is not presented or maintained for any improper purpose and is warranted by existing law. A request for attorney fees by reason of Rule 55.03(b) violations must be by a separate motion or request describing the specific conduct which is alleged as a violation of Rule 55.03(b). Rule 55.03(c)(1).
This court has ruled in Ingram v. Horne, 785 S.W.2d 735, 740 (Mo.App.S.D.1990), that an allegation in an answer to a petition was insufficient to invoke the provisions of Rule 55.03(c) where: (1) it was not in the form of a motion; (2) it did not identify a specific pleading or motion filed by the opposing party which allegedly was in violation of Rule 55.03(b); and (3) it did not state the reasons why the pleading or motion did not comply with that rule. Although this specific basis for reversal of the judgment for attorney fees was not briefed by the parties, we are entitled, in our discretion, to review for plain error, pursuant to Rule 84.13(c). We have done so and conclude that, in the instant case, the allegation in Father's answer fails for the same reasons specified in Ingram, and the judgment for attorney fees must, therefore, be reversed.
Finally, we note that Father requests in his brief that we find, pursuant to Rule 84.19, that Mother's appeal is frivolous and award him damages in the amount of $1,000. Under the particular facts and circumstances of this case, that request is denied.
The order and judgment of the trial court is affirmed except that portion awarding attorney fees, which is reversed.
PREWITT, Judge, concurring.
I concur in the principal opinion. However, my doing so should not be interpreted as a change from the views I expressed in J.P. v. P.W., 772 S.W.2d 786, 794-795 (Mo.App. S.D.1989) (Prewitt, J., dissenting).
NOTES
[1] There was no evidence that this occurred in the presence of anyone other than Mother.
[2] Mother's present counsel did not represent her in the dissolution proceedings.
[3] All references to rules are to Missouri Rules of Civil Procedure (1994).
[4] All references to statutes are to RSMo 1986, V.A.M.S.
[5] While the decree permitted Father to be with the child from 9:00 a.m. until 5:00 p.m. on Saturdays and alternating holidays, the evidence indicated that she took a nap for a least two hours during that time.