Sandra Kay MAYES, Appellant,

v.

Robert Joseph MAYES, Respondent.

No. 20477.

Missouri Court of Appeals,
Southern District,
Division Two.

March 28, 1997.

Jacob Y. Garrett, Christena E. Silvey, Ray & Garrett, West Plains, for appellant.

Brad D. Eidson, Houston, for respondent.

MONTGOMERY, Chief Judge.

This is a dissolution of marriage case in which Sandra Kay Mayes (Appellant) presents three points relied on. Those points read as follows:

  I.  The trial court's failure to order supervised visitation to father was not in the best interest of the parties['] minor children and as such, should be reversed and remanded to the trial court as the decree is not supported by substantial evidence, is against the weight of the evidence presented that unsupervised visitation would endanger the children's emotional development, and is not in accordance with applicable principles of law.

  II.  The trial court erred in the exclusion of competent, material and relevant evidence offered by mother of incidents of inappropriate sexual behavior and criminal activity by father which were relevant to the determination of father's visitation rights in accordance with the best interests of the minor children.

  III.  The trial court erred in failing to appoint a guardian ad litem for the parties['] minor children to ensure the best interests of the minor children would be advanced by allowing father unsupervised visitation.

Respondent asserts that each point fails to comply with Rule 84.04 and suggests that the appeal should be dismissed. He relies on *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978), and *Stroup v. Facet Automotive Filter Co.*, 919 S.W.2d 273 (Mo.App.1996). Respondent correctly observes that Appellant's points fail "to state briefly and precisely what actions or rulings of the Court are sought to be reviewed and, more importantly, wherein and why the rulings are claimed to be erroneous."

Rule 84.04(d),[1] governing an appellant's points relied on, provides, in pertinent part:

  The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder....

  Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule.

In *Jones v. Wolff*, 887 S.W.2d 806 (Mo.App. 1994), the court explained the Rule 84.04(d) briefing requirements.

  The three components of a point relied on are: a concise statement of the challenged ruling of the trial court; the rule of law the court should have applied; and the evidentiary basis upon which the asserted rule is applicable. Points which do not state what ruling of the trial court is challenged nor provide a proper evidentiary basis, but instead set out abstract statements of law, preserve nothing for appeal.

*Id.* at 808 (citation omitted.)

Moreover, "allegations of error ... not properly briefed shall not be considered in any civil appeal...." Rule 84.13(a). Com-

---

pliance with Rule 84.04 briefing requirements is mandatory, partly to ensure that appellate courts do not become advocates by speculating on facts and arguments which have not been made. *Cook v. Wadlington*, 821 S.W.2d 864, 866 (Mo.App.1991). We should not be asked or expected to assume such role. *Id.*

■ At the very least, Appellant's points fail to fulfill the wherein and why requirements of Rule 84.04(d). Point I is an abstract assertion that fails to set forth a concise statement of the challenged ruling of the trial court and fails to identify any evidence giving rise to the ruling which Appellant contends the trial court should have made.

Point II is abstract assertion that fails to set forth the rule of law Appellant believes the trial court should have applied, and it does not identify any evidence giving rise to the ruling which Appellant contends the trial court should have made.

Point III contains the same deficiencies as Point II and is merely an abstract assertion of what the trial court should have done.

As Respondent has suggested, violations of Rule 84.04 constitute grounds for dismissal of an appeal. *Jones*, 887 S.W.2d at 808. Nevertheless, because children are involved, we have gratuitously reviewed the record for plain error pursuant to Rule 84.13(c) which reads:

> Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

Thus, our review will be limited to examining the argument portion of the brief for the purpose of determining whether there has been plain error. *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App.1988).

■ Appellant's argument under Point I begins by calling our attention to § 452.400, RSMo Supp.1995,[2] the statute addressing vis-itation rights of a noncustodial parent. Pertinent provisions of this statute provide:

1. A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development.... If the court finds that domestic violence has occurred, the court may find that granting visitation to the abusive party is in the best interests of the child. The court shall not grant visitation to the parent not granted custody if such parent has been found guilty of or pled guilty to a felony violation of chapter 566, RSMo, when the child was the victim or a violation of section 568.020, RSMo, when the child was a victim....

2. ... "**Supervised visitation**", as used in this section, is visitation which takes place in the presence of a responsible adult appointed by the court for the protection of the child.

Appellant argues that supervised visitation was required under this section because of Respondent's extensive criminal record, his lack of interest in the children, his emotional abuse of the oldest daughter along with her fear of him, and Respondent's drinking which resulted in violence in the children's presence.

While Respondent freely admitted his criminal record,[3] he denied most of the remaining complaints against him. In spite of his criminal record, the trial court apparently believed Respondent rather than Appellant and her witnesses.

"We do not substitute our judgment for that of the trial court on credibility issues." *Zweemer v. Cantrell*, 823 S.W.2d 531, 534 (Mo.App.1992). Furthermore, in a court-tried case, we accept as true the evidence and inferences favorable to the judgment and disregard contrary evidence. *P.L.W. v. T.R.W*, 890 S.W.2d 688, 690 (Mo.App.1994). In this case, Appellant has emphasized the evidence favorable to her and downplayed

---

**2.** Actually, Appellant cites us to § 452.400, RSMo 1994. Because Appellant quotes language from § 452.400, RSMo Supp.1995, we will assume she relies on the latter statute.

**3.** At trial, Respondent admitted that he has the following felony convictions in the State of Kentucky: sexual abuse and robbery in 1978; burglary in 1982; sexual abuse and bail jumping in 1985; and escape in 1988.

evidence favorable to the judgment. Such an effort is fruitless.

Even if the trial court had believed Appellant's evidence, she cites only *R.W.H. v. D.M.H.*, 898 S.W.2d 144, 148 (Mo.App.1995), to support her contention that the evidence required supervised visitation (based on impairment of the children's emotional development but not on endangerment of their physical health). *R.W.H.* provides no support for Appellant. There, father unsuccessfully appealed contending the trial court erroneously failed to order supervised visitation. Father's motion to modify alleged that mother physically abused their child. Father did not allege she impaired their child's emotional development. Thus, the issue in *R.W.H.* centered on physical abuse as a basis for ordering supervised visitation. Here, Appellant never pled or attempted to prove that physical abuse occurred. Clearly, *R.W.H.* does not indicate that Appellant's evidence concerning emotional impairment required an order of supervised visitation.

We have carefully read the entire transcript. We are convinced that no plain error has occurred regarding the denial of supervised visitation.

■ Appellant raises another issue in her Point I argument that fails to appear in her point relied on. She asserts the trial court failed to correctly apply the law under § 452.400 because the statute denies visitation to a noncustodial parent "if such parent has been found guilty of or pled guilty to a felony violation of chapter 566, RSMo., when the child was the victim." Appellant's point relied on only claims that supervised visitation was erroneously denied. An appellate court is obliged to determine only those issues raised in the points relied on. *Mashburn v. Tri–State Motor Transit Co.*, 841 S.W.2d 249, 252 (Mo.App.1992).

Even if this issue required a determination, it is obvious that Respondent has never been "found guilty of or pled guilty to a felony violation of chapter 566, RSMo." All of Respondent's felony convictions occurred in the State of Kentucky, and the record lacks evidence that any "child" was a victim. Therefore, this statutory provision has no application to him.

Point I lacks merit.

■ Appellant's argument under Point II claims the trial court erroneously excluded her evidence that (1) "she had received numerous telephone calls from mothers of other minor female children alleging that [Respondent] had pulled down his pants and made other inappropriate sexual advance[s] towards their daughters," and (2) "there were pending criminal charges against [Respondent] for sexually exposing himself to minors and allegedly molesting a nine year old girl in Texas County near the time of the dissolution."

Without citing a single case in support of (1) or (2), Appellant simply proclaims that exclusion of this relevant evidence was reversible error.

As to (1), the trial court sustained Respondent's hearsay objection. "Hearsay is a statement of another, reported in court by a witness, who offers it to prove the truth of the matter asserted therein." *In Interest of A.M.K.*, 723 S.W.2d 50, 53 (Mo.App.1986). Without question, Appellant offered the rejected evidence for the truth of what the mothers told her. The evidence was not admissible. *See C.R.K. v. H.J.K.*, 672 S.W.2d 696 (Mo.App.1984) (holding that the court erroneously admitted hearsay testimony from adults concerning a child's statements to them regarding her father's sexual abuse).

As to (2), the trial court sustained Respondent's objection that a criminal charge "has no relevance" to this proceeding.

"The fact that a witness has been convicted of a crime may be shown as affecting his credibility, but the fact that he is then, or has been in the past, charged with the commission of a crime, . . . is not admissible." *Marrah v. J & R Motor Supply Co.*, 165 S.W.2d 271, 276–77 (Mo.App.1942). The reason behind this rule is sound. Until conviction, "the accused enjoys the presumption of innocence and good repute as others do; and neither his arrest, nor the placing of a charge against him . . . may be considered as evidence of his guilt." *Hoffman v. Graber*, 153 S.W.2d 817, 819–20 (Mo.App.1941).

Appellant seems to argue that Respondent's pending charge was relevant as substantive evidence of the truth of the matters

charged. The trial court correctly rejected this evidence.

We find no plain error resulting from rejection of the evidence under Point II.

■ Appellant's last point alleges the trial court abused its discretion in failing to appoint a guardian ad litem for the minor children. Before addressing Appellant's argument, we note the record shows that she did not allege physical or emotional abuse or neglect in any pleading nor did she request a guardian ad litem prior, during, or subsequent to trial. In addition, she did not even request that the trial court interview either child in chambers. Thus, the first claim for the necessity of the appointment of a guardian ad litem arises here. Apparently, Appellant claims the trial court was obligated to appoint a guardian ad litem *sua sponte.*

One of the cases Appellant cites is dispositive of this contention. In *T.C.H. v. K.M.H.,* 784 S.W.2d 281 (Mo.App.1989), the mother alleged the trial court erred in failing to *sua sponte* appoint a guardian ad litem to represent the children's interests. The appellate court held:

> A "court *may* appoint a guardian ad litem" for a child if the court finds it to be in the best interest of the child. § 452.490.4. (emphasis added). Similarly, § 452.423.1, RSMo Supp.1988 provides that "the court *may* appoint a guardian ad litem." (emphasis added). However, when "child abuse or neglect is alleged," the "court *shall* appoint a guardian ad litem" *Id.* Thus, there is no requirement that a guardian ad litem be appointed except where child abuse or neglect is alleged.

> Here, neither party alleged child abuse or neglect. Nor did either party ask the trial court to appoint a guardian ad litem. The trial court did not abuse its discretion.

*Id.* at 286.

As required by *T.C.H.,* we determine trial court did not abuse its discretion and deny Point III.

We find an absence of any manifest injustice or miscarriage of justice in this case. The judgment is affirmed.

PARRISH, J., concurs.

SHRUM, J., dissents and files dissenting opinion.

SHRUM, Judge, dissenting.

I respectfully dissent. I believe Appellant's third point has merit. In my view, the trial court should have appointed *sua sponte* a guardian ad litem for these children so that all available evidence concerning the visitation issue would have been available to the court in making its decision. I would reverse and remand for that purpose.

> "[I]t is the public policy of our state that, in cases where the welfare of a child is involved, the child becomes a ward of the court with respect to the issues of that case, *State ex rel. Catholic Charities of St. Louis v. Hoester,* 494 S.W.2d 70, 73 (Mo. banc 1973), and that in such cases, the overriding duty of the court is to serve best interest of the child. *McCammon v. McCammon,* 680 S.W.2d 196, 202 (Mo.App. 1984). In approaching that task, the trial court is not limited to sifting out competing claims . . ., but can, and should, see that all available evidence concerning the child custody issue is produced in court so that it can be thoroughly evaluated. . . . In most custody cases, the evidence gatherers are lawyers for the competing parents, whose primary purpose is to put their client's best foot forward, at the expense of the other parent. As a result, no one is really representing the interests of the children."

> . . . .

> "Children are our most precious resource, and it is fundamental that they have a chance to be brought up in an environment where they are not abused or neglected. To that end, it is the duty of our courts to use every available legal means to see that such a goal be attained."

*C.J.(S.)R. v. G.D.S.,* 701 S.W.2d 165, 169–70[4] (Mo.App.1985).

In this case, no one has adequately repre-

sented the interests of the children involved.[1] Certainly, Appellant has not done so. Her failure to offer evidence on the details of Husband's sexual abuse convictions in Kentucky and her feeble and failed attempt to present admissible testimony about Husband's alleged post-prison sexual offenses in Missouri hardly bespeaks of adequate representation for these children. Appellant's failure to adduce such evidence is hardly surprising considering her indifference about Respondent's background. Thus, after Appellant's affair with Respondent in 1984 led to her pregnancy with their oldest child, Respondent was arrested in 1984 on a fugitive warrant and returned to a penitentiary in Kentucky. In 1988, Respondent escaped from prison and returned to Missouri to see Appellant. He was apprehended again and returned to prison where he stayed until released in 1993. However, Appellant was apparently not alarmed by Respondent's conduct. To the contrary, in June 1990, Appellant went to Kentucky and married Respondent while he was in prison. She did this without inquiring of anyone—other than Respondent—about his background. Appellant testified that Respondent lied to her about his convictions, telling her they were for stealing. Respondent's testimony on this subject was equivocal. He did admit, however, to being less than candid with Respondent on the subject, saying: "I didn't elaborate on the full record." In summary, this record strongly supports the inference that Appellant had tunnel vision regarding Respondent and that her single-minded desire for him left little room for concern about the welfare of any children produced by their union.

After Respondent's release in 1993, this couple resumed cohabitation, leading to the birth of the second child. In mid-summer 1994, Appellant saw legal documents filed by Respondent's former wife which recited that Respondent had two children in Kentucky. These documents revealed to Appellant that Respondent's ex-wife was trying to change the children's names, in part because Respondent had two felony convic-

tions in Kentucky for sexual abuse. Apparently Appellant never asked Respondent about the details of these convictions; instead, she continued to live with Respondent until their separation in March 1995.

Section 452.400 [2] directs that courts "shall" consider a parent's history or tendency to assault in deciding visitation. In 1995, the legislature expressed its continued concern about a parent's past history when it declared that no court shall grant visitation to a non-custodial parent "[i]f such parent has been found guilty of or pled guilty to a felony violation of chapter 566, RSMo, when the child was the victim...." § 452.400.1, RSMo Cum.Supp.1995. It is illogical to say, as the majority does, that the legislature intended for § 452.400 to apply only to parents who are convicted in Missouri of sexually abusing children and not to those convicted of similar crimes in other states.

Here, the record does not reveal if Respondent's children by his former wife were his victims. There is no evidence on the age or sex of Respondent's victims nor are there any other background details concerning the sexual abuse crimes for which Respondent was convicted in Kentucky. Likewise, the record is silent on whether the underlying facts of Respondent's sexual abuse convictions might support a felony conviction under Chapter 566, RSMo. It is clear, however, that the trial court knew of Respondent's two felony convictions for sexual abuse. Moreover, the trial court was most certainly aware that Appellant, through indifference or incompetence, did not produce an adequate record from which the court could make an informed decision about the visitation that best protected the children. *See* § 452.400. Although there is no statutory requirement that a guardian ad litem be appointed except where child abuse or neglect is alleged, *Rombach v. Rombach,* 867 S.W.2d 500, 503 (Mo. banc 1993), I am persuaded that the trial court abused its discretion when it did not appoint *sua sponte* a guardian ad litem to participate in the proceedings as permitted by § 452.490.4. *See C.J.(S.)R.,* 701 S.W.2d at 169. Only in that fashion could the trial

---

1. Counsel on appeal for Appellant was not her trial lawyer.

2. All statutory references are to RSMo 1994 unless otherwise indicated.

court have performed its duty to see that all available evidence concerning the child visitation issue was produced so that it could be thoroughly evaluated before the court made its decision on that question. *Id.*

There is an ever-increasing recognition of the recidivistic nature of sex abuse offenders. Legislative attention has been given to this problem through enactments such as mandatory registration of sexual abuse offenders, § 566.600–620, RSMo Cum.Supp.1995, and relaxing rules of evidence in criminal prosecutions of sexual offenses so that, in certain instances, evidence of other charges or uncharged crimes may be admissible, § 566.025. In my view, Respondent's two felony sex abuse convictions and the potential for recidivism distinguish this case from others where no abuse of discretion was found when trial courts did not appoint *sua sponte* a guardian ad litem.

I would reverse and remand with directions that a guardian ad litem be appointed for these children pursuant to § 452.490.4. In that manner, the court can determine whether unsupervised visitation poses an unwarranted risk to the children.